**W.B. HINTON DRILLING COMPANY and Hinton Production Company, Appellants,**

v.

**Inocente ZUNIGA and Wife, Betty Zuniga, Appellees.**

**No. 12–88–00132–CV.**

Court of Appeals of Texas, Tyler.

Oct. 31, 1989.

Rehearing Overruled Dec. 29, 1989.

Charles H. Clark, Tyler, Joann N. Wilkins, Dallas, for appellants.

John C. Fisher, Longview, for appellees.

Before RAMEY, C.J., and COLLEY and BILL BASS, JJ.

COLLEY, Justice.

This is a personal injury suit. Plaintiff/appellee Inocente Zuniga (Zuniga), an employee of Big M Construction Company (Big M), suffered severe physical injuries when a steel girder fell from a flat-bed trailer onto appellee during the course of appellee's employment with Big M.

Appellee brought this common-law negligence suit against defendants/appellants W.B. Hinton Drilling Company and Hinton Production Company (Hinton). The case was tried to a jury whose verdict formed the basis for the trial court's judgment awarding appellee money damages in excess of one million dollars. Hinton's motion for new trial was overruled by the trial judge.

Hinton briefs eight points of error, contending: (1) there is no evidence to sustain

the jury's finding in response to "question No. 1" that appellant was guilty of negligence or that such negligence was a proximate cause of appellee's injuries; (2) the evidence is factually insufficient to sustain such findings; (3) such findings are contrary to the great weight and preponderance of the evidence; (4) the refusal of the jury to find that appellee was guilty of contributory negligence is contrary to the great weight and preponderance of the evidence; (5) there is no evidence to sustain the jury's finding in answer to "special issue No. 3" that appellee will incur future medical care damages in the amount of $82,500; (6) the evidence is factually insufficient to support the future medical care damage award; (7) the trial court erred "in excluding evidence concerning [appellee's] long-term alcohol abuse problems"; and (8) the trial court erred in refusing to submit Hinton's requested instruction to the jury relating to the proximate cause issues.

■ The record reveals the following undisputed facts: Under a contract between Hinton and Big M, Big M agreed to help dismantle Hinton's drilling rig No. 6 and load some of the steel members of the rig onto a flat-bed, 8–foot–wide, 32–foot–long trailer provided by Hinton. The trailer was loaded on September 21, 1986, and after the load was tied and "boomed" down with chains by Hinton's employees, the trailer was pulled by Hinton's truck driven by Marshal Lee Beakley to another location approximately twenty miles away. Beakley "dropped" the trailer, i.e., unhitched his truck therefrom at the new location so that the steel could be unloaded and reassembled on the rig.

Zuniga and Steve Wright, Big M's crane operator, loaded the steel on the trailer on September 21, and the next day both came to the new location in Anderson County, to unload the steel and position each piece for reassembly on the rig over the new drilling site. Testimony reveals that the "center steel" [1] had been loaded on the trailer in a certain order so as to expedite the unloading and positioning by Wright over the drilling platform where they were to be put into their proper places on the reassembled rig.

The steel was loaded on the trailer in three separate six-foot stacks which were approximately two to three inches apart. When the steel was fully loaded on September 21, 1986, Beakley, assisted by Hinton's "roughnecks," placed chains over each stack, connecting the chains to the opposite side of the trailer. The chains were then tightened by use of a mechanical device called a "boomer" which takes the "slack" [2] out of the chains, thereby securing the entire load for transportation or hauling by a truck so that the loaded steel would not shift or move during the haul. The boomers on the tie-down chains were positioned on the right side of the trailer in this case.

Three eyewitnesses testified at trial, viz.: Inocente Zuniga, appellee; Steve Wright, Big M's crane operator and Zuniga's co-worker; and Ricardo Garza, a Hinton employee at the time of the accident.

According to Wright, he and appellee arrived at the drill site at 7:00 a.m. on September 22, 1986. They checked the crane engine for oil levels, and also determined that the crane's gas tank had sufficient fuel for the unloading operations. Wright explained that appellee was his helper or "swamper" in the unloading process. Wright related that a swamper must get on the trailer and connect the four "frog chains" [3] to each individual piece of

1. According to the two video tape exhibits (Defendants' Exhibits 2 and 3), "center steel" is that portion of the substructure of an oil drilling rig which holds the entire substructure together so that a derrick can be erected thereon for drilling operations. The individual pieces of center steel vary in size, weight and shape. Some are three sided and some are four sided. Some pieces have cross-bracing, some do not. In any event, when these pieces are loaded on a flatbed trailer, the larger pieces are loaded first, and the smaller pieces are placed inside or on top of the larger pieces.

2. The evidence shows that the "slack" eliminated by use of the boomer was approximately four inches on each chain.

3. "Frog chains" are equal lengths of chain attached to the hook at the end of the pulling cable extending from the boom of the crane. Each frog chain has a hook attached to its bottom end.

steel to be unloaded. He testified that appellee "was fixing to" hook the first frog chain to the first piece of steel to be unloaded from the trailer when a "couple of seconds" later that piece of steel "[moved] and [dragged] Zuniga off...." Wright also testified that, at that time, appellee had not hooked up the first frog chain to the piece of steel that fell. Wright further stated, "I think when they throwed [sic] (released) the slam [handle] on that *back* boomer, the boomer next to that pile [of steel], *it must have shook [sic] the trailer or something* because the pile he [Zuniga] was on *had a bad incline on it.*[4] I believe that's what started it." Wright testified that the slant or incline of the piece that fell was caused by the lengthwise loading method used by Beakley, and that the piece would not have fallen if the steel had been loaded "crossways." On cross-examination, Wright stated that the *front* stack of steel from which the piece fell *had no chains on it,* but that the stack immediately behind it (the middle of three stacks) *had chains which were loosened.* He testified that appellee was "down inside"[5] the steel piece, a position Wright called "dangerous." Wright further stated that appellee did not "work [the steel] from the outside [of the] stack ... [which is] a safe way to do it...." Wright admitted on cross-examination that he did not see the trailer "shaking" when the boomer was released.

Zuniga testified that he "walked to the back [of the trailer, climbed up] and I went toward the front but not quite to the front, around the middle of it." He stated that he saw chains "in the back part through the part that I climbed through." He related that "at the time this piece of steel shift[ed]" he "was in this part of the pile. The beams had a lot of oil, and I was kind of like a little bit inside of one of the beams." Zuniga stated that at the time the piece fell, he had not attached the "hook from the frog chains ... onto the piece of steel that fell on [him].... I [had] the chain in my hand, and then I bend [sic] down to try to hook it; but when I bend [sic] down the steel shifted." Zuniga also stated that in his opinion, "[t]he reason why the steel shift[ed] is because on the process of taking [transporting] it from the other place to the [new] site, it's possible for it to move from one side to the other one, and that can cause it to be *uneven.* And when I was standing in this part of it, somebody *released* the chain, and that's when it happened." Zuniga, when asked if "there was anyway that [he] could get out of the way of the moving piece of steel?," replied, "I could have moved by hanging on the chain that was from the crane, but the steel had already caught my leg, and it wasn't possible."

Later in his testimony, Zuniga stated that Beakley was not supervising the unloading operations at the time of the accident. When he was asked by his counsel, "At the time that you got injured, ... why was it necessary for you to be down in this steel up to your knee?" In response, Zuniga said, "It was impossible to walk on the other side because it was full of grease and oil. The steel wasn't big enough to even walk on top of them."

Zuniga was asked to "show ... the jury which stack of steel you were on when you got hurt." In response, Zuniga stated, "I was on the corner almost to the right side of where the chauffeur [driver] of the truck ... and toward the front of the *middle stack* [of steel]." Zuniga further related that just before the accident, only one tie-down chain remained on "the same stack behind where I was standing in the same pile." He testified that there were no chains on the front stack at that time.

On cross-examination, Zuniga was asked if "the load [was] untied ... the chains unloosened when you started to get upon the trailer?" Zuniga answered that ques-

---

4. All emphasis supplied by author unless otherwise indicated.

5. The term "down inside" was never fully explained by the testimony; however, the video tapes demonstrate that when the three and four sided steel members are loaded on a flat surface, a hollow naturally occurs between the sides of the steel members. And for our purpose here, we construe the term to mean that Zuniga was positioned in that cavity at the time the piece of steel fell from the trailer.

tion in these words, "There were three chains tied," but later he testified that he did not know whether the three remaining chains he saw "were loosened or not loose, but I saw them across the cargo." Zuniga stated that of the three chains, one was on the middle stack and two were on the "very back [stack]." During cross-examination, Zuniga maintained that he "looked at [the load] to see if it had been loaded properly" in contradiction to his earlier deposition testimony that he did not look at the load for that purpose. Zuniga related that during his deposition he was not asked the same question which elicited his response in the deposition that "No, I didn't look at it." During his direct testimony Zuniga said he had worked "a long time in rigs."

Ricardo Garza, a Hinton employee called as a witness by Zuniga, testified that Zuniga had no business being where he was when he got hurt, "in the middle of that piece of steel that fell on him." On cross-examination, Garza stated that the steel was loaded in a "normal" way on the occasion in question, and that it was standard procedure for the chains and boomers to be removed when the truck is unhitched from the trailer to be unloaded. He also stated that the load in question was stable.

Garza further testified that he had seen Zuniga on "lots of jobs." He stated that at the time the piece fell from the trailer, Zuniga was standing in the middle of the Steel member that fell on him, on the last stack in the "back side" of the trailer; that no chains were in place over that stack; and that Zuniga, in fact, had hooked up one of the frog chains to the piece that fell, and "was on the verge of hooking another one. What happened, why it slipped, whether the crane operator pulled on it, but the piece of steel starting sliding." Garza further stated "[t]hat's when it kind of pulled Mr. [Zuniga] ... [a]nyway, it just pulled him off the trailer. He hit the ground first. The piece of steel fell on him. When it came loose, all the [frog] chain[s] started flopping up over our heads...." Garza stated, in effect, that the "flopping" of the frog chains could have occurred because the chains had "had a bind on it at one time."

The entire deposition testimony of Marshal Lee Beakley was introduced by Zuniga. Beakley denied that he supervised the *loading* operations on September 21, 1986, but stated that the steel was loaded properly lengthwise on the trailer, and that the accident had nothing to do with the loading of the trailer. Beakley also testified that he did not tell "anyone there at the scene not to load [the trailer] in a particular way or to load it in a particular way because [he] did not have a permit to carry a wide load." Beakley agreed that he made no "comments at all about the load...." As to the *unloading* operations, Beakley stated that Hinton's employees (roughnecks) were responsible for untying the load from the truck, that is, releasing the boomers and removing the tie-down chains so that the steel could be unloaded. Beakley stated that with the help of other employees of Hinton, he placed seven tie-down chains and seven boomers on the load on September 21, 1986. He testified that loaded steel will shift in transport if improperly chained down, but stated that the load in question was properly secured.

Zuniga responds to Hinton's evidentiary points by suggesting that "[Hinton's] liability borders on *res ipsa* ... [and its conduct] is close to *gross negligence*." He contends that the evidence conclusively shows that Hinton controlled "the manner and order of the loading and unloading operations...." Zuniga argues that Beakley "took over and exercised control" of those operations. Zuniga contends also that the evidence supports the jury's finding of negligence against Hinton, arguing that the evidence demonstrates that Hinton was negligent in at least three respects: (1) in failing to have the steel stacked in a stable fashion, or (2) by failing to hook the boomer chains properly, or (3) by failing to apply sufficient tension to the boomers to maintain the leaning load.

Zuniga correctly notes that according to Zuniga's testimony, Beakley "told [him] don't worry about anything. Tomorrow [September 22, 1986] when you start unloading, nobody is going to take the chains off until you put [sic] your own chains."

In addition, he argues that the evidence shows that he "had to get down into the steel because the [girders] on either side were oily and narrow ... [and there was] no clearance along each side of the ... trailer."

A reading of the record reveals several conflicts in the evidence. The first conflict concerns where Zuniga was standing at the time the piece of steel slipped off the trailer and fell on him. Zuniga testified that he was standing on the *middle* stack of steel. Wright stated Zuniga was standing on the *front* stack and Garza testified that Zuniga was standing on the *rear* stack. Second, there is a conflict as to whether Zuniga had actually hooked up a frog chain on the piece that moved. Both Zuniga and Wright testified that appellee had not attached his first "frog" chain to the piece that fell, while Garza stated that Zuniga had in fact attached one frog chain from the crane cable to the piece that fell. Third, there is confusion and dispute as to the stack from which the piece fell. Wright testified that the piece of steel that fell on Zuniga came from the *front* stack. Garza testified that the piece slipped from the *rear* stack. Zuniga's testimony does not reveal from which stack the piece fell.

However, Zuniga, Wright and Garza each testified that appellee was standing inside of the piece of steel that fell. Wright and Garza both testified that Zuniga put himself in a dangerous position in so doing. T.D. Fitzgerald, who testified as an expert witness for appellant, testified that in his opinion if Zuniga was standing inside of the steel girder when attempting to attach his frog chain he was in an unsafe place.

The only evidence explaining Zuniga's conduct in placing himself in that position was his statement to the effect that he was trying to avoid walking on oily or greasy girders in the same stack. There is no evidence contradicting the testimony of Wright and Garza that appellee positioned himself in a dangerous place when he attempted to hook up his frog chains to the

piece of steel. From a causal standpoint, it is likewise clear from the same evidence that when the steel girder slipped, it carried or "pulled" appellee with it over the left side of the trailer onto the ground and fell on him, causing his severe injuries. Additionally, despite Zuniga's understanding [6] that during the *unloading* operations the tie-down chains would not be removed by appellant's employees until he had attached the frog chains from the crane, he testified that he saw and was aware that all of the tie-down chains on the front and middle stacks of steel, save one on the middle stack, had been removed before he attempted to attach his frog chains. Moreover, Zuniga and Wright testified that the steel that fell was sitting on a slant, presumably towards the left side of the trailer, as Zuniga approached it to attach his frog chains.

Having carefully studied, discussed, and analyzed all the evidence [7] before the jury, we are persuaded that the jury's refusal to find that Zuniga was guilty of negligence, and that his negligence was a proximate cause of his injuries is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). Appellant's fourth point of error is sustained.

Since our decision on the fourth point of error is dispositive of this appeal, we deem it unnecessary to consider either Hinton's remaining evidentiary points or appellee's claim that the jury was entitled to infer from the evidence that appellant's conduct amounted to actionable negligence under the doctrine of *res ipsa loquitur.* *See Mobile Chemical Co. v. Bell,* 517 S.W.2d 245, 252 (Tex.1974), and *Owen v. Brown,* 447 S.W.2d 883, 886 (Tex.1969). However, since a new trial of this case is a strong possibility, we will address Hinton's eighth point of error which presents a perplexing problem as yet unresolved by the Texas Supreme Court.

---

**6.** Based on Beakley's "promise" to him.

**7.** Relevant to the issue of Zuniga's negligence and its causal connection.

The opinion of the Texas Supreme Court in *Varela v. American Petrofina Co. of Texas, Inc.*, 658 S.W.2d 561 (Tex.1983), appears to prohibit the trial court from giving an instruction like the one requested by appellant. The requested instruction read as follows, to wit:

> You are instructed that under the law of this State the W.B. Hinton Drilling Company cannot make either Big M Construction Company or Steve Wright a party to this lawsuit, therefore, you will not be asked to find whether or not Big M Construction Co. or Steve Wright was negligent on the occasion in question. However, you may consider the behavior of Big M Construction Co. and Steve Wright in deciding whether or not any acts or omissions of W.B. Hinton Drilling Co. was a proximate cause of the occurrence in question.

In *Varela*,[8] Justice Wallace writing for the unanimous court, posed the question, "[W]hether an employer's *negligence may be considered* in a third-party negligence action brought by an employee arising out of an accidental injury covered by workers' compensation insurance?"

The court answered the foregoing question in the negative, saying, "We hold that under applicable statutes, the employer's negligence *may not be considered.*" *Id.* at 562. The court later reasoned that Petrofi-na had no right of contribution against Varela's employer, Hydrocarbon Construction Company, because of the provisions of former article 8306, § 3, of the Workers' Compensation Act,[9] and concluded that former article 2212a, §§ 2(b) and 2(e)[10], were inapplicable in the case. *Varela*, 658 S.W.2d at 562, 563. Although former article 8306, section 3, was amended and restructured in 1983 (*see* Tex.Rev.Civ.Stat. Ann. art. 8306, § 3 (Vernon Supp.1989)), the language relied on by the *Varela* court is carried forward in the 1983 amendments without substantial change.[11] Therefore we consider *Varela's* rule to have survived the amendments to article 8306, section 3. The core of the holding in *Varela* is found in the following language:

> We hold that Article 8306, § 3 is an exception to Article 2212a, § 2(b). When read together those two Articles indicate the intent of the Legislature that where the third party defendant's negligence is greater than that of the employee, the employee *shall recover the total amount of damages as found by the jury diminished only in proportion to the amount of the negligence attributed to the employee.*

*Id.* at 562.

A trio[12] of intermediate appellate court cases have emerged in the wake of *Varela*.

---

**8.** Varela, an employee of Hydrocarbon Construction Company, after settling his workers' compensation claim with Hydrocarbon's workers' compensation insurance carrier, filed a common-law negligence action against Petrofina seeking damages for personal injuries resulting from his on-the-job injury. Petrofina filed a third-party action against Hydrocarbon seeking contribution and/or indemnity. The jury found Varela, Hydrocarbon and Petrofina all guilty of negligence proximately causing Varela's total damages of $606,800.00; and found the following percentages of responsibility: Varela—15%; Petrofina—43%; and Hydrocarbon—42%. Based on this verdict, the trial court entered judgment against Petrofina for 43% of the total amount of damages or the sum of $260,924.00. The Beaumont Court of Appeals affirmed (644 S.W.2d 903). The Supreme Court reversed both lower courts and rendered judgment for Varela against Petrofina in the amount of $515,780.00, representing the total damages found by the jury less Varela's percentage of comparative negligence of 15% or $91,020.00.

**9.** Act of June 10, 1963, ch. 437, § 1, 1963 Tex. Gen.Laws 1132, 1133, amended by act of May 17, 1983, ch. 131, § 1, 1983 Tex.Gen.Laws 613, 614–615.

**10.** Act of April 9, 1973, ch. 28, 1973 Tex.Gen. Laws 41, 42, revised and codified as a part of section 33.012, Tex.Civ.Prac. & Rem.Code Ann., Act effective September 1, 1985, ch. 959, § 1, 1985 Tex.Gen.Laws 3242, 3271, rewritten in 1987. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 33.012 and 33.015 (Vernon Supp.1989).

**11.** *See* subsections (a), (d), and (f) of the current version of article 8306, section 3.

**12.** *Williams v. Union Carbide Corp.*, 734 S.W.2d 699 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Agricultural Warehouse v. Uvalle*, 759 S.W.2d 691 (Tex.App.—Dallas 1988, no writ); and *Sappington v. Younger Transportation, Inc.*, 758 S.W.2d 866 (Tex.App.—Corpus Christi 1988, writ denied).

In *Williams*, the Houston Court held that the trial court did not err in admitting evidence of the plaintiff-worker's employer's negligence relating to the plaintiff's compensable injury that was the subject of the suit against an allegedly negligent third party. The Houston court read *Varela* to only prohibit the entry of a judgment against a plaintiff's employer. In *Agricultural Warehouse*, the Dallas court reversed the judgment of the trial court because of a faulty instruction, which amounted to "a misstatement of the law" and the error of the trial judge in *excluding evidence of the plaintiff's employer's conduct* on the occasion in question. In support of its ruling, the court said:

> Unfortunately, the [trial] court misapplied [sic] the concept set out in the opinion [in *Varela*]. *Varela* does stand for the proposition that an employer's negligence cannot be considered in a third-party negligence action for the purpose of *reducing the third-party's damages*. However, this restriction is applicable only with respect to the entry of judgment. *See Williams v. Union Carbide Corporation*, 734 S.W.2d 699, 702 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

*Id.* at 694.

In *Sappington*, the Corpus Christi court, in rejecting the plaintiff-worker's claim that the trial court erred in giving a *sole proximate cause instruction* wrote:

> We do not read *Varela* as prohibiting evidence of an employer's negligence[13] or causation in a third party action when the negligence is not for [sic] reduction of damages or contribution under the former article 2212a, now Tex.Civ.Prac. & Rem.Code Ann. § 33.001, et seq. Thus, the employer's negligence ... could properly be considered in determining *causation*.

The court overruled Sappington's point of error and affirmed the judgment, relying in the main on the rationale of *Williams*. *Sappington*, 758 S.W.2d at 868.

Judge Duggan's opinion in *Williams*, written for a panel of the Houston 14th Court of Appeals, is most appealing. In that opinion, Judge Duggan struck a bold blow by way of dicta to read *Varela* narrowly, to solve, in part, the perplexing dilemma arising from *Varela's* apparent rule. Unlimited, *Varela's* rule prohibits the consideration, and hence the admission of any evidence of the conduct of the plaintiff-worker's employer or his agents, servants, and employees that occurred during the course of the event giving rise to a common-law negligence action for personal injuries, if that conduct could reasonably be found to constitute negligence proximately causing[14] the plaintiff's injury and resultant damages. Four unjust consequences of *Varela's* rule are: (1) common-law defendants are stripped of their traditional defense of proving that the plaintiff's damages were proximately caused by the negligence of other actors; (2) the jury is required to find, despite the "comparative responsibility" statutes,[15] only the percentage of responsibility of the plaintiff-worker and the third-party defendant which divided between them must equal 100%; (3) it permits the employer-subscriber or his insurance carrier to initiate a subrogation claim and recover from the worker-plaintiff the total amount of the compensation and medical expenses paid on the workers' compensation claim, even though the negligence of the employer was the sole or a proximate cause of the plaintiff-worker's injuries; (4) the jury must try the facts without evidence of the conduct of one or more of the significant, and perhaps negligent actors in the events under consideration by them.

---

**13.** The error complained of was the court's submission of a sole proximate cause instruction over Sappington's proper and timely objection. The point of error rests upon several grounds, one of which was that under the instruction the jury was "told ... to consider the negligence of [Sappington's] employer" contrary to *Varela's* rule.

**14.** Or found to be the *sole* proximate cause of such damages.

**15.** *See,* inter alia, Tex.Civ.Prac. & Rem.Code Ann. §§ 33.003, 33.012, 33.013 (Vernon Supp. 1989).

Such a rule is unrealistic and unfair to common-law defendants and to the jury. It insults the role of the jury, and holds the judiciary up to ridicule. This state of the law begs for relief by the legislature. The Supreme Court refused Williams' petition for writ of error with the order and notation "no reversible error." In our opinion that ruling does not constitute approval of the dicta of the Houston court that limits the application of *Varela's* rule to the mere entry of a judgment, and that Court's declaration that *Varela's* prohibition does not operate to exclude "evidence of an employer's negligence at trial." *Williams,* 734 S.W.2d at 702. It is incorrect to reason, in the face of *Varela's* broad pronouncement, that evidence of an employer's negligence is admissible, and may form the basis for the trier of the fact's determination of the causal issues presented in the case. It is likewise incorrect to reason, as did the Corpus Christi Court, that the alleged negligence of the employer *is not* admissible before the trier of fact for the purpose of providing a basis for a judgment that diminishes the amount of damages recoverable by the plaintiff, or orders contribution from the employer under chapter 33 of the Tex.Civ.Prac. & Rem. Code, but *is admissible* on the causation issues. This is so because the *Varela* court *totally disregarded* the percentage of negligence attributed to the employer by the jury in' that case, and plainly said, "[W]here the third party defendant's negligence is *greater* than that of the *employee,* the employee *shall recover the total amount of damages as found by the jury diminished only in proportion to the amount of the negligence attributed to the employee." Varela,* 658 S.W.2d at 562.

Logic dictates that under *Varela,* the jury's finding of the percentage of "responsibility" of the negligence proximately causing the plaintiff-worker's damages must be allocated by the jury 100% between the plaintiff-worker and the negligent common-law defendant.

Admittedly, Judge Duggan's rationale in *Williams* represents an attempt to alleviate the unjust and unnecessary consequences flowing from *Varela,* namely, allowing the employer or his compensation insurance carrier, as the case may be, not only to avoid liability for his own negligence, but to seek and enforce subrogation rights under Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a (Vernon Supp.1989) at the expense of the common-law defendant, and requiring the trier of fact to make findings of fact respecting the common-law defendant's negligence and its effects in a vacuum, thereby confusing and misleading the jury. Nevertheless, *Williams'* narrow reading, by way of dicta, though courageous, is squarely contradictory to the rationale of *Varela* and the essential holdings unambiguously set forth therein. Since *Varela's* rule is based on the prohibition of Tex.Civ.Stat.Ann. art. 8306, § 3, (Vernon Supp.1989), the legislature should address the problem unless the Supreme Court chooses to render an interpretation of article 8306, section 3, that eliminates the necessity for trial and intermediate appellate court's repeated confrontation with the dilemma produced by *Varela's* rule. We urge the High Court to reconsider *Varela,* or to explain its scope thereby determining the correctness of the opinions in *Williams, Uvalle,* and *Sappington.*

We hold the opinion that under *Varela,* Hinton is not entitled to the requested instruction on retrial of this cause.

The judgment is reversed and the cause is remanded for a new trial.

## OPINION ON APPELLANTS' AND APPELLEES' MOTIONS FOR REHEARING

### APPELLANTS' MOTION

Appellants claim we erred in our ruling on their eighth point of error. We concluded that the decision in *Varela v. American Petrofina Co. of Texas, Inc.,* 658 S.W.2d 561 (Tex.1983), prohibits the submission of their requested jury instruction [1] upon retrial of this cause.

1. That instruction is set out in toto in our original opinion.

Appellants argue that our decision to overrule their eighth appellate point of error was erroneous. Appellants point out that we failed to follow the law as announced in *Sappington v. Younger Transportation, Inc.*, 758 S.W.2d 866 (Tex.App. —Corpus Christi 1988, writ denied), and that we misconstrued *Varela*.

Appellants argue that: (1) though "[t]he negligence of Big M and [its employee] Steve Wright was not an issue," the requested instruction would have informed the jury that they *"would not be concerned with* [Big M's and Wright's negligence]"; but (2) "[t]he instruction [would have instructed] the jury" to *consider* the evidence they heard respecting *"the acts and conduct* of Big M and Wright." These arguments represent, in our opinion, the same kind of flawed logic found in the intermediate court cases cited by us in our opinion. In effect, the instruction tells the jury that the questions submitted *do not inquire about the negligence* of Zuniga's employer, but at the same time instructs them to consider "the behavior" of the employer to decide whether or not "acts or omissions" on the part of appellants proximately caused the event producing Zuniga's injuries.

Jurisprudentially, it is undesirable for the intermediate appellate courts to make a piecemeal determination of what *Varela* prohibits and what it does not prohibit, such as the admissibility of evidence of the acts and omissions of an employer/subscriber, the submission of a sole proximate cause instruction, or for that matter the *complete* submission to the trier of the fact of appropriate issues relating to the employer's negligence.

The language of Tex.Rev.Civ.Stat.Ann. art. 8306, § 3(d) (Vernon Supp.1989) (hereinafter referred to as article 8306) need not be construed to forbid the trial of the aforementioned issues. Article 8306 purports to limit only the employer's *liability* to the common-law defendants for contribution or indemnity "in the absence of a written agreement expressly assuming such...." As we stated in our opinion,

under *Varela's* rule, not only does the employer escape responsibility for the consequences of his own negligence,[2] but the common-law defendant in cases like the one at bar suffers both the consequences of his own negligence and the negligence of the employer. The Texas Supreme Court should reconsider *Varela*, and narrow its holding to prohibit only the granting of a judgment for noncontractual indemnity or contribution against the employer/subscriber in such actions. Such a decision would assure a just and *complete trial* of the issues of the employer's negligence, and the employer's comparative responsibility for the plaintiff's injuries and resultant damages. However, since the Supreme Court has not seen fit to take such action, we remain persuaded that *Varela's* interpretation of article 8306, § 3(d), prohibits any consideration, direct or indirect, by the trier of the fact of the conduct of an employer/subscriber. Therefore, we overrule appellants' motion for rehearing.

## APPELLEES' MOTION

The appellees, Inocente Zuniga and wife, Betty Zuniga, contend that we erred in sustaining appellants' point of error no. 4. By that point of error, the appellants alleged that the jury's failure to find Zuniga guilty of contributory negligence was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Appellees argue that, by that ruling, we impermissibly substituted our judgment for that of the jury. They take issue with our use of the term "refused to find" to characterize the jury's "nonfinding" on the question of Zuniga's contributory negligence. By their third assignment of error, appellees assert that we failed to employ the proper standard of review in reaching our conclusion, citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986), *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646 (Tex. 1988), and *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384 (Tex.1989).

**2.** A proper consequence under the Workers' Compensation Act.

By their fourth, fifth and sixth assignments of error, the appellees argue that we erred in sustaining appellants' great "'weight and preponderance' complaint" because this court in so doing (1) found that Zuniga's contributory negligence was established "as a matter of law"; (2) deprived appellees of their right to "trial by jury"; and (3) purported to judge the "credibility of the witnesses."

By their seventh assignment of error, appellees assert that we erred in sustaining appellants' fourth point of error because "the ... record establishes conclusively ... that [appellants'] negligence was the sole proximate cause of Zuniga's injuries." By their eighth assignment of error, appellees assert that "the record contains 'no evidence' [raising] ... contributory negligence on the part of Zuniga or [that] such ... negligence [was] a proximate cause [of Zuniga's injuries]."

Under their ninth assignment of error, appellees allege that appellants' fourth point of error presents only a "no evidence" point.

By their tenth assignment of error, appellees contend that if appellants' fourth point does present a factually insufficient point, the point was not preserved for appellate review because Paragraph III of appellant's motion for new trial failed to direct "the trial court's attention specifically to which subdivision ... [A or B] of the jury's answers to Question No. 1 were being challenged ... i.e., Hinton's negligence and proximate causation ... or Zuniga's negligence and proximate causation...."

In our previous opinion, we carefully and conscientiously detailed all the evidence bearing on Zuniga's negligence, both that which tended to support the nonfinding, as well as that which tended to support the existence of such negligence. Likewise, we explained objectively why the nonfinding is contrary to the overwhelming preponderance *and* weight of the evidence in our judgment.

*Pool* and *Cropper* recognize the duty of a court of appeals to properly address and decide points of error like the one at hand.[3] Those decisions make it clear that the phrases we utilized in our opinion, "refusal to find," and "failure to find" convey the same meaning, and in fact are interchangeable. Both phrases implicitly refer to a nonfinding or a negative finding of a vital fact issue by the trier of the fact. We find no merit in appellees' first three assignments of error. Likewise, we overrule appellees' fourth, fifth and sixth assignments of error.

Based on our heretofore careful review of the record, as demonstrated by our opinion, we cannot agree that the record shows, as a matter of law, that appellants' negligence as found by the jury was the *sole* proximate cause of Zuniga's injuries, or that there is "no evidence" that Zuniga was guilty of contributory negligence proximately causing his injuries. Appellees' seventh and eighth assignments of error are overruled.

■ Appellees' contention that appellants' point of error no. 4 presents only a "no evidence" point is likewise untenable. That contention, respecting a virtually identical point of error, was rejected by the Supreme Court in *Pool*, 715 S.W.2d at 632–633. Appellants' ninth assignment of error is overruled.

■ By their tenth and final assignment of error, appellees assert that if the appellants' point of error no. 4 does present a factually insufficient point, the point was not preserved for appellate review. Appellees claim that Paragraph III of appellants' motion for new trial failed, as required by Tex.R.App.P. 52(a), to direct "the trial court's attention specifically to which subdivision ... [A or B] of the jury's answers to Question No. 1 were being challenged—i.e., Hinton's negligence and proximate causation ... or Zuniga's negligence and proximate causation...."

Tex.R.Civ.P. 324 provides in part:

**3.** Points wherein the presenter, who bears the burden of proof on the issue of fact involved, claims that the negative or nonfinding is contrary to the great weight and preponderance of the evidence.

(b) *Motion for New Trial Required.* A point in a motion for new trial is a prerequisite to the following complaints on appeal:

. . . .

(2) A complaint of factual insufficiency of the evidence to support a jury finding;

. . . .

Tex.R.App.P. 52(a) reads in part:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request . . . or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context.

Paragraph III of appellants' motion for new trial reads as follows:

The Defendants are entitled to a new trial in this case because the jury's answer to Special Issue No. 1 is against the great weight and preponderance of the evidence.

We conclude that the language of Paragraph III specifically complains of the factual insufficiency of the evidence to support the jury's answers to *both* subdivisions (A) and (B) of Question No. 1 as required by Tex.R.App.P. 52(a). Therefore we overrule appellees' tenth assignment of error.

Appellees' motion for rehearing is overruled.