DRESSER INDUSTRIES,
INC., Petitioner,

v.

Arthur B. LEE, Respondent.

No. D–2213.

Supreme Court of Texas.

Oct. 27, 1993.

John M. Smith, Longview, Molly H. Anderson, Michael A. Hatchell, Tyler, for petitioner.

Blake Bailey, Jimmy Michael Negem, Andy Tindel, Tyler, for respondent.

## OPINION

HECHT, Justice.

Several courts of appeals have disagreed over the effect of our decision in *Varela v. American Petrofina Co.*, 658 S.W.2d 561 (Tex.1983). Three courts of appeals, and the United States Court of Appeals for the Fifth Circuit, have concluded that *Varela* does not preclude a defendant in a personal injury lawsuit from introducing evidence that the negligence of plaintiff's employer caused the accident, even though the employer is shield-

ed from liability by the Workers' Compensation Law. *Williams v. Union Carbide Corp.*, 734 S.W.2d 699 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Sappington v. Younger Transp., Inc.*, 758 S.W.2d 866 (Tex. App.—Corpus Christi 1988, writ denied); *Agricultural Warehouse, Inc. v. Uvalle*, 759 S.W.2d 691 (Tex.App.—Dallas 1988), *writ denied per curiam*, 779 S.W.2d 68 (Tex.1989) (noting but not addressing another issue); *Turlington v. Phillips Petroleum Co.*, 795 F.2d 434 (5th Cir.1986). At least one other court, in this case and in a prior decision, has reached the opposite conclusion. 821 S.W.2d 406 (Tex.App.—Tyler 1991); *W.B. Hinton Drilling Co. v. Zuniga*, 784 S.W.2d 442 (Tex. App.—Tyler 1989, no writ). We granted writ of error to resolve this conflict. We disagree with the court of appeals in this case and therefore reverse its judgment and remand the case for further proceedings. Because it may be necessary to retry this case, we also consider the parties' arguments concerning the manner in which this case should be submitted to the jury.

# I

Tyler Pipe Industries, Inc. operates a foundry where pipe is made using silica flour and silica sand. Arthur B. Lee began working at the foundry in 1964, when he was eighteen years old, and remained in that employment until 1972. For many years, including the entire period during which Lee worked at the foundry, the pipe-making process utilized there produced a powder of minute particles of silica which filled the air in the foundry. Lee and other workers inhaled this dusty air.

Inhaling silica dust may cause respiratory disease, a risk that has been recognized for more than a century and of which Tyler Pipe was well aware. Trade organizations like the National Foundry Association, to which Tyler Pipe belonged, published materials which Tyler Pipe received, warning of the dangers of using silica in foundries and recommending methods to lessen or prevent such dangers. Despite its knowledge of the risks of working around silica dust, Tyler Pipe took few precautions to safeguard its employees. It had a policy of requiring workers to wear respira-

tors in the area of the plant where the silica material was mixed with water and sprayed, an area where Lee sometimes worked, but it is unclear how strictly that policy was enforced. There was no such policy in other areas of the plant, which were also very dusty. The dust bothered Lee, but since Tyler Pipe did not require him to wear any protective gear, and because of the heat in the foundry, he rarely used a mask and used a respirator only once.

One of Tyler Pipe's suppliers of silica products was Dresser Industries, Inc. Dresser's products were delivered to Tyler Pipe sometimes in bulk form and sometimes in bags. Although Dresser, too, was aware of the risks of inhaling silica dust, its bags did not bear a warning label.

Several years after leaving Tyler Pipe, Lee began to develop various respiratory diseases, including what was eventually diagnosed as silicosis. In 1987, Lee joined seventeen other employees of Tyler Pipe in a suit against Dresser and other suppliers of silica products, alleging that defendants' failure to warn them of the risks related to the use of silica products caused their injuries. Tyler Pipe was immune from liability to plaintiffs or defendants because plaintiffs' injuries were covered by workers' compensation insurance. TEX.REV.CIV.STAT.ANN. art. 8308–4.01, –4.04 (Vernon Supp.1993) (formerly TEX.REV.CIV.STAT.ANN. art. 8306, § 3, Act approved June 10, 1963, 58th Leg., R.S., ch. 437, § 1, 1963 Tex.Gen.Laws 1132, amended and restructured without substantial change by Act approved May 17, 1983, 68th Leg., R.S., ch. 131, § 1, 1983 Tex.Gen.Laws 613, repealed and restructured without substantial change by Act of 1989, 71st Leg., 2d C.S., ch. 1, §§ 4.01, 4.04, 1989 Tex.Gen.Laws 1, 32–33, eff. Jan. 1, 1991). By the time the case came to trial in 1990, Lee was the only remaining plaintiff, the others having settled, and Dresser was the only defendant. The case was tried on a single legal theory—strict liability—with Lee contending that the absence of warning labels on the bags of Dresser's silica products rendered them unreasonably dangerous.

The trial court, relying primarily on *Varela*, excluded all evidence offered by Dresser

to show that Tyler Pipe's failure to require Lee to take precautions to protect himself, such as wearing a mask or respirator, was the sole cause of Lee's injuries. The trial court also refused Dresser's request to give the jury the following instruction regarding sole cause:

> There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate or producing cause.

In addition, the trial court excluded certain evidence that Lee's own negligence caused his injuries, and refused to submit an issue on contributory negligence to the jury.

The jury found that Lee suffered damages totaling $754,444.43, caused 96% by Dresser's products and 4% by those of a settling defendant. The trial court rendered judgment against Dresser for 96% of the damages found by the jury, plus interest, a total of $755,972.04.

Dresser appealed. The court of appeals agreed with the trial court that *Varela* barred all evidence of Tyler Pipe's negligence, even if offered to show that its negligence was the sole cause of Lee's injuries. The court criticized what it perceived to be the rule of *Varela* but considered itself bound to follow that case. The court also held that the trial court did not err in refusing to submit contributory negligence to the jury because Dresser did not request an accompanying instruction that Lee had no duty to discover or guard against the dangers involved in using Dresser's products. The court of appeals affirmed the trial court's judgment.

Shortly before Dresser filed its petition for writ of error in this Court, Lee died.

## II

In *Varela*, plaintiff sued the owner of the premises where he had been working at the time he fell and injured himself. Since the accident was covered by workers' compensation insurance, plaintiff's employer was immune from liability to either plaintiff or de-fendant. See former TEX.REV.CIV.STAT.ANN. art. 8306 § 3, now TEX.REV.CIV.STAT.ANN. art. 8308–4.01, –4.04. However, the trial court instructed the jury to apportion responsibility among all persons whose negligence caused the accident. The jury assigned plaintiff 15% responsibility, defendant 43%, and plaintiff's employer 42%. The trial court rendered judgment for plaintiff against defendant for only 43% of the damages found by the jury, and plaintiff appealed. This Court summarized the issue raised on appeal and its holding as follows:

> The sole question before us is whether an employer's negligence may be considered in a third-party negligence action brought by an employee arising out of an accidental injury covered by workers' compensation insurance. We hold that under applicable statutes, the employer's negligence may not be considered.

658 S.W.2d at 561–562. The Court reasoned that since a claim for contribution against the subscribing employer was barred by the Workers' Compensation Law, the Comparative Responsibility Law, Tex.Rev.Civ.Stat. Ann. art. 2212a (amended and recodified as TEX.CIV.PRAC. & REM.CODE §§ 33.001–.016), did not apply to limit the damages for which defendant was liable to the percentage it was found to have caused. Thus, defendant was required to pay the damages found by the jury reduced only by the percentage caused by the plaintiff. In other words, defendant was required to pay the damages caused by both it and plaintiff's employer.

The only issue addressed in *Varela* was whether defendant was liable for that part of plaintiff's damages caused by plaintiff's employer. *See Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 835 (Tex.1986). The language of the opinion must be read in that context. Lee, however, argues that the statement in *Varela*—"the employer's negligence may not be considered"—should be read more broadly to prohibit consideration of an employer's negligence, not solely for the purpose of allocating responsibility, but for any purpose at all. Thus, according to Lee, *Varela* holds that no evidence of an employer's negligence is admissible, even if offered for the purpose of showing that only

the employer, and not the defendant, was at fault. In the abstract, the language of *Varela* may of course be read as broadly as Lee argues it should be; in context, however, the meaning is more limited. The plaintiff in *Varela* did not contend that all evidence of his employer's negligence should have been excluded, nor did the defendant contend that the employer's negligence was the sole cause of the plaintiff's injuries.[1] The admissibility of evidence of the employer's negligence was not raised as an issue or discussed. To the contrary, both the plaintiff and this Court simply assumed that the evidence was properly admitted. The Court's language must be read in the context of the issues decided. The context of *Varela* precludes Lee's convex reading of one phrase from the opinion.

■ Not only did we not espouse Lee's broad position in *Varela*, we should not do so now. If a defendant were unable to show the role of plaintiff's employer in the circumstances of plaintiff's injury, the defendant would be limited in its defense to countering evidence that its negligence caused the injuries. A defendant is entitled to try to convince the jury that not only did it *not* cause plaintiff's injuries, but someone else *did*. A void of evidence concerning the employer's conduct would leave a logical hiatus in the story presented to the jury. With no one allowed to show what part the employer's conduct played, the jury would be left to wonder whether anyone other than the defendant *could* have caused plaintiff's injuries. The court of appeals agreed that the rule urged by Lee had unjust consequences, but felt that it correctly expressed the holding of *Varela*.[2] We agree that the rule is not a

good one, but we disagree that it finds expression in *Varela*.

Dresser was thus entitled to show that Tyler Pipe's negligence was the sole cause of Lee's injuries. Dresser offered evidence, which the trial court excluded, to show that Tyler Pipe failed to ventilate its foundry properly and to require employees to wear safety masks. The jury could have concluded from this evidence that Tyler Pipe was negligent and that its negligence was a cause of Lee's injuries. The fact that Dresser failed to include in the labels on bags of its silica products warnings about risks involved in the use of those products does not preclude a finding that Tyler Pipe's negligence was the sole cause of Lee's injuries.

■ In *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 606 (Tex.1972), we considered but did not adopt a rebuttable presumption that an adequate warning will be read and that the failure to give an adequate warning is necessarily a cause of injury. Instead, we concluded that even if there were such a presumption, there was sufficient evidence to show that plaintiff would have disregarded any warning given. In *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d at 834, we did adopt the presumption suggested in *Technical Chemical*, holding that "it may be rebutted with evidence that the user [of the product] was blind, illiterate, intoxicated at the time of the product's use, irresponsible, lax in judgment, or by some other circumstances tending to show that the improper use would have occurred regardless of the proposed warnings or instructions." Employment of this presumption excuses plaintiff from offering self-serving evidence—that yes, he would have followed instructions if

---

1. In a companion case to *Varela, Teakell v. Perma Stone Co.*, 658 S.W.2d 563 (Tex.), *reversing* 653 S.W.2d 483 (Tex.App.–Corpus Christi 1983), the defendant did argue that plaintiff's employer's negligence was the sole proximate cause of plaintiff's injuries as a matter of law. 653 S.W.2d at 488–489. However, evidence of the employer's negligence was admitted at trial, and the jury found that the negligence of both the defendant and the employer caused plaintiff's injuries. The parties in *Teakell* did not address the admissibility of evidence of the employer's negligence, and this Court did not consider the propriety of such

evidence in determining whether the employer's conduct was the sole cause of plaintiff's injuries.

2. In a prior case, *W.B. Hinton Drilling Co. v. Zuniga*, 784 S.W.2d 442 (Tex.App.—Tyler 1989, no writ) (extension granted, but no application filed), the same court of appeals went so far as to suggest that the rule of *Varela* which requires an employer's joint tortfeasor to pay for the negligence of both is unjust. *Id.* at 450. *See* William C. Powers Jr., *Torts—Personal*, 38 Sw.L.J. 1, 21–24 (1984). Although an amicus curiae adopts this argument in this case, Dresser does not, and we do not address it.

only they had been given—simply to meet his burden of proof. Once defendant has offered evidence of circumstances tending to show that no warning would have been heeded, an issue arises which can be resolved only by the finder of fact.

■ In the present case, evidence was adduced at trial that Lee had an eighth grade education, had difficulty reading, and thus did not pay attention to warning labels.[3] Dresser offered evidence that because of the heat in the workplace Lee seldom used a mask or respirator to protect against inhaling the silica dust, even though it bothered him so much that he had to blow it out of his nose and spit it out of his mouth. Lee's working conditions—a hot, dusty, improperly ventilated foundry—are, in the words of *Magro,* "other circumstance[s] tending to show that the improper use would have occurred regardless of the proposed warnings or instructions." *Id.* This evidence was sufficient to rebut any presumption that Lee would have heeded a warning by Dresser and that the absence of such a warning was at least a cause, if not the only cause, of Lee's injury. Although Lee disputed whether he would have heeded a warning label on bags of Dresser products, Dresser was entitled to have that conflict in the evidence resolved by the jury.[4] Dresser's evidence, though certainly not conclusive, raised a factual issue for the jury to resolve. If the jury believed Dresser's evidence, it could have concluded that Tyler Pipe's negligence was not only *a* cause, but the *sole* cause of Lee's injuries. It follows, therefore, that the trial court's exclusion of Dresser's evidence was reversible error.

### III

Because this case must be remanded for a new trial, we consider two other matters raised and argued by the parties which will be significant in any retrial of this case. The first is whether Dresser is entitled to have the jury instructed regarding sole cause if that issue is raised by the evidence. The second concerns the manner in which plaintiff's contributory negligence should be submitted to the jury if raised by the evidence.

### A

■ In *First International Bank v. Roper Corp.,* 686 S.W.2d 602 (Tex.1985), this Court held that instructing the jury regarding sole cause in a products liability case was a comment on the weight of the evidence and thus reversible error. We stressed, however, that this holding was limited to cases tried before our decision in *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984), when no comparative causation rule applied. The basis for this limitation was that prior to *Duncan,* contributory or third party negligence was a defense in a strict liability case only if it rose to the level of misuse or assumption of the risk. The defendant in *Roper,* we observed, did not attempt to establish this defense but only to rebut the causation element of plaintiff's case. In these circumstances, we reasoned, the sole cause instruction added nothing to the charge and even distracted the jury from the issues it was required to decide.

We have never extended *Roper* to apply to a post-*Duncan* or statutory comparative causation case, nor could we do so without also extending the reasoning on which it was based. One court has held that *Roper* does not and should not apply in such cases. *Ahlschlager v. Remington Arms Co.,* 750 S.W.2d 832, 835–836 (Tex.App.—Houston [14th Dist.] 1988, writ denied). *See also* 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 70.03 (1982) (sole cause instruction should be used in products liability case if raised by the evidence). We agree with the court of appeals in *Ahlschlager.* A

---

3. The dissent characterizes this sentence as "assuming" that persons with limited educations will not heed warning labels. *Post* at 755. We assume no such thing; we simply do not assume that such persons *will always* read and follow instructions. They may, or they may not, and when the evidence concerning whether they did is conflicting, the jury should resolve the conflict.

4. Allowing the issue to be submitted to the jury does not, contrary to the dissent's statement, deprive Lee of his legal rights. Lee was entitled to convince the jury that he would have heeded warnings had they been given. Nor is it "elitist", *post* at 758, to insist that fact issues be submitted to the jury.

defendant in a products liability case is entitled to have the jury instructed regarding sole cause if that issue is raised by the evidence. There is no dispute in this case that the instruction Dresser requested was correct in all respects.

## B

■ The court of appeals held that Dresser was not entitled to have the issue of Lee's contributory negligence submitted to the jury because the issue Dresser requested was not "in substantially correct wording" as required by TEX.R.CIV.P. 278. The defect, according to the appeals court, was that the contributory negligence question which Dresser requested was not accompanied by an instruction to the effect that a plaintiff has no duty to discover defects in a product or guard against their existence. We have held that plaintiff has no such duty. *Shamrock Fuel & Oil Sales Co. v. Tunks*, 416 S.W.2d 779, 785–86 (Tex.1967); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 793 (Tex. 1967); *Duncan*, 665 S.W.2d at 432; *see also* RESTATEMENT (SECOND) OF TORTS § 402A, cmt. n (1965); *compare Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91, 94–96 (Tex.1988) (dissenting opinion by Phillips, C.J., arguing that this rule should be abandoned), *with id.* at 96–100 (Gonzalez, J., arguing that the rule should be retained).

■ Assuming that this rule is correct, Dresser had no burden to request that the jury be instructed on the rule. Dresser contends that there was no evidence suggesting that Lee was negligent in failing to discover the risks of using silica products, and therefore there was no need for the limiting instruction. Regardless of whether Dresser was correct in this contention, it was not required to request an instruction which, according to its view of the case, was not raised by the evidence and was not proper. If the evidence raised an issue whether Lee's own negligence caused his injuries, Dresser was entitled to its requested issues on contributory negligence, and the burden was on Lee to

object to the absence of a limiting instruction.

\* \* \* \* \* \*

The judgment of the court of appeals is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

DOGGETT, Justice, dissenting.

In this case a manufacturer provided no warnings of any kind whatsoever concerning its product, which is lethal if inhaled over an extended period of time. In its defense, the manufacturer says its product was so dangerous that the decedent's employer should have provided the warning. Additionally the manufacturer alleges that the deceased worker, who it contends was too ignorant to have understood a warning anyway, should have discovered the defect himself.

### I.

Today's opinion rewrites the product safety law of Texas to deny protection to those who have "only an eighth grade education," by assuming that such people would "not pay attention to warning labels." 880 S.W.2d at 754. This significant change in our law is not addressed solely to workers in a pipe factory, but extends to all of the more than one million adult Texans with less than a ninth grade education.[1] Certainly a claimant has a burden to prove that a failure to warn constitutes a producing cause of his damages, but

> when a manufacturer fails to give adequate warnings or instructions, a rebuttable presumption arises that the user would have read and heeded such warnings or instructions.... This presumption may be rebutted with evidence that the user was blind, illiterate, intoxicated at the time of the product's use, irresponsible, lax in judgment, or by some other circumstance tending to show that the improper use would have occurred regardless of the proposed warnings or instructions.

1. There are 1,387,528 Texans, 25 years and older, with less than a ninth grade education. Census of Population & Housing, 1990: Summary

Tape file 3, Texas, machine readable data files prepared by the Bureau of the Census, Washington, D.C. 1991.

*Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 834 (Tex.1986) (citations omitted); *see also Technical Chem. Co. v. Jacobs*, 480 S.W.2d 602, 606 (Tex.1972). While conceding that it failed to provide any warnings or instructions, Dresser seeks to avoid this presumption with evidence of Lee's eighth grade education. But those with the misfortune of having only limited formal education should not be so quickly excluded from an important legal safeguard. The *Magro* presumption makes *illiteracy*, not educational attainment, a "circumstance tending to show" that the warning would have gone unheeded. 721 S.W.2d at 834. Here the record shows that while Lee did have "some trouble reading," he was not illiterate, and he had the ability to understand and heed a warning.[2]

As if this were not enough injustice for one opinion, the majority concludes that those Texans who have unpleasant "working conditions" deserve less protection from our product safety laws than the rest of us. 880 S.W.2d at 754. Incredibly, today's opinion declares that evidence that an employee works in a "hot, dusty, improperly ventilated" workplace where use of a safety device is uncomfortable can defeat the presumption that any warning about the deadly qualities of a product would be heeded. *Id.* Until

this unfortunate ruling, such circumstances had no such destructive power, since they have no "tend[ency] to show that the improper use would have occurred" if proper warnings had been given. *Magro*, 721 S.W.2d at 834.

But now this presumption is permitted to evaporate apparently because of Lee's testimony that, while at times "bothered" by dust, he chose not to wear a mask.[3] Being "bothered" by dust and having knowledge that it contains microscopic particles that can kill are entirely different propositions. Indeed, today's pronouncement excusing Dresser appears in direct conflict with this court's most recent writing on this subject, in which we said that the proper inquiry in a failure to warn case is whether the manufacturer's alert to the user adequately conveys the particular serious consequences associated with the product's foreseeable use. *See Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 922 n. 9 (Tex.1993), *petition for cert. filed* 62 U.S.L.W. 3166 (U.S. Aug. 31, 1993) (No. 93–337). That an employee prefers the discomfort of heat and dust to the sweaty discomfort of wearing a mask hardly demonstrates that he would have made the same choice had he known that his very life was at stake.[4]

2. Contrary to the majority's suggestion, there is no "conflicting" evidence here as to whether Lee would "read and follow instructions." 880 S.W.2d at 754 n. 3. The sole evidence pertaining to this matter was Lee's own direct testimony:

Q: What school did you go to?
A: Chandler, Texas and Athens, Texas.
Q: Did you go up through eighth grade?
A: Yes, I did.
Q: Mr. Lee, do you have some trouble reading?
A: Yes, I do.
Q: Would you have any trouble reading a warning sign or anything of that nature though?
A: I do recognize warning signs.
Q: Do you have a driver's license?
A: Yes, I do.
Q: Did you have a police officer get in a car with you and you passed the driving test?
A: Yes, sir.
Q: Including recognizing the warning signs, et cetera?
A: Yes.

3. As Lee testified:

Q: Was there ever an occasion that you wore a respirator out there?
A: I wore one once.
Q: Why did you wear it?
A: Well, I wore it to try to keep all that old white powder silica out of my mouth and nose and that's why I tried wearing one and it was so hot and so—got so sweaty until I couldn't, you know, keep it on on account of—well, if I had kept it on, I probably would have fell out and I just couldn't keep it on long it was so hot and dusty in there. . . .

4. As the record demonstrates:

Q: Mr. Lee, did you try wearing a respirator because you had heard that the silica was dangerous or because it was a nuisance?
A: No, I tried wearing it on account of trying to keep it out of my nose and mouth.
Q: But no one told you it could cause a disease, did they?
A: No, they didn't.

    *    *    *    *    *    *

Q: If you had known that you could be suffering from the type of disease you have here today by breathing that silica flour, would you have voluntarily exposed yourself to that silica?

Because the presumption was not rebutted, the majority's conclusion that the alleged negligence of the employer, Tyler Pipe, could have been the sole proximate cause of Lee's injuries is erroneous. If there is any circumstance justifying a "sole proximate cause" instruction, this is not it, since Dresser offered no other evidence to show that its own failure to warn was not a producing cause.

A more general problem with instructions of this type is their tendency to tilt the jury charge unfairly to one side or the other. Our disapproval of unnecessary, surplus instructions, which in one case may work to the advantage of the plaintiff and in another to that of the defendant, has until today been uniform. *See, e.g., Turner v. Gen. Motors Corp.,* 584 S.W.2d 844, 850–51 (Tex.1979); *Fleishman v. Guadiano,* 651 S.W.2d 730, 731 (Tex.1983). In *Accord v. Gen. Motors Corp.,* 669 S.W.2d 111, 115–16 (Tex.1984), we emphasized that in strict liability cases, "[t]he jury need not and should not be burdened with surplus instructions." We again explained in *First Int'l Bank v. Roper Corp.,* 686 S.W.2d 602, 604 (Tex.1985), that a sole cause instruction misfocuses the jury's attention away from whether the product was defective; it "place[s] an undue emphasis on [a third party's] negligence when the jury [i]s considering the existence of a defect and its relationship to the injurious event."

Rather than acknowledging all of these rulings, the majority references only *Roper,* which it discounts as not "apply[ing] to a post-*Duncan* [*v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984)] or statutory comparative causation case." 880 S.W.2d at 754.

Our consistent prior decisions cannot be so easily distinguished. In *Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 836 (Tex.1986), which followed *Duncan,* we relied on *Roper*[5] in affirming the trial court's refusal to give a similar unnecessary instruction regarding the duty to warn. There we unqualifiedly emphasized that

> appropriate special issues ask the jury about the existence of a product defect and its causal connection to the accident. Any additional instructions serve merely to distract the jury's attention from the essential issues of the case.

*Magro* certainly indicates that surplus instructions remain as harmful after *Duncan* as before it.[6]

## II.

In addition to blaming the victim for his death, Dresser also blames his employer. A third party cannot shift responsibility for its own shortcomings or those of its product's to an injured person's employer under our unanimous holding in *Varela v. Am. Petrofina Co.,* 658 S.W.2d 561 (Tex.1983). Recognizing that the employee is statutorily barred from complaining of an employer's conduct, we held there that "the employer's negligence *may not be considered*" in a third party negligence action. *Id.* at 562 (emphasis added). By what it euphemistically labels reading *Varela* in "context", 880 S.W.2d at 752, the majority essentially reads that ruling out of the lawbooks.

Since the employer's negligence "may not be considered," there is certainly no basis for introducing evidence of a matter that cannot

A: No, I wouldn't.
Q: If there had been no way to get a respirator or something else to wear, would you have continued to work on around that silica?
A: No, I wouldn't.

5. This case is like *Roper,* where the third party's negligence was not submitted to the jury, rather than like *Duncan,* where the third party's negligence was submitted. *See* discussion *infra* of *Varela v. Am. Petrofina Co.,* 658 S.W.2d 561 (Tex.1983).

6. Instead of following the repeated writings of this court, the majority simply elevates *Ahlschlager v. Remington Arms Co.,* 750 S.W.2d 832, 835–36 (Tex.App.—Houston [14th Dist.] 1988, writ denied), as the new law of the land. Not only does that opinion represent questionable jurisprudence, but it also bears no factual resemblance to the instant case. *Ahlschlager* involved conflicting versions of the accidental discharge of a gun. The plaintiff argued that it resulted from a design defect; the defendant manufacturer alleged a negligent firing by a third party, who was unaware that the gun was loaded. These irreconcilable positions presented an either/or choice to the jury—either the plaintiff's version is true or the defendant's version is true. Even if a sole cause instruction were permissible under such circumstances, it would never be proper in a case, like the present, in which a manufacturer is essentially seeking to excuse its failure to warn by pointing to a similar failure by another.

form the grounds for the jury's decision. This rationale forms the basis of our holding in *Magro*, which concerned a worker whose hand was mangled by a can punch machine when a co-worker made an adjustment while operating another part of the machine. When a favorable verdict for Magro in his suit against the product manufacturer for failure to warn was overturned on appeal, we stated that the court of appeals

> erroneously ordered the trial court to submit Sanders' misuse as contributory negligence pursuant to *Duncan* ... apparently believ[ing] that Sanders should be treated as a settling defendant under *Duncan* because Magro received workers' compensation for his injuries.

721 S.W.2d at 835. Holding that "[o]ur *Varela* rationale is applicable and controlling in the present case," *id.*, we ruled that

> [t]he *Duncan* decision established a comparative causation scheme under which a non-settling defendant manufacturer can receive contribution from settling defendants. A plaintiff's recovery and a manufacturer's liability are reduced by the percentage of causation attributable to a settling defendant's negligence. *Duncan*, 665 S.W.2d at 432. The provisions of the Workers' Compensation Act prevent Magro from having a right of recovery against [the co-worker,] Sanders. Since a defendant's right of contribution is derived from a plaintiff's right of recovery, Ragsdale Brothers has no claim for contribution against Sanders under *Duncan*. *Varela*, 658 S.W.2d at 563. Accordingly, we hold that a co-employee's negligence should not be considered in a third party products liability action when the plaintiff's injuries were covered by workers' compensation.

*Id.* at 836.

To the extent that our law shifts to the third party tortfeasor responsibility for an employer's share of any resulting damages, this results from a legislative decision, which if unwarranted should be changed in that forum, not here. Moreover, this is a particularly unworthy case for this majority to superimpose its own social policy preference, since Dresser representatives never made the slightest recommendation for improved safety or worker warnings during any of their repeated visits to the employer's plant.

### III.

The next well settled law of the state to be disturbed today is the rule that

> [c]ontributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.

*Shamrock Fuel & Oil Sales v. Tunks*, 416 S.W.2d 779, 783 (Tex.1967) (quoting RESTATEMENT (SECOND) OF TORTS § 402A cmt. n (1965)); *see also Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 432 (Tex.1984); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 790 (Tex.1967).[7] As this court reaffirmed in *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91, 93 (Tex.1988), the policy behind this rule is that "consumers have a right to rely on product safety."

The same testimony of Lee's not having worn a mask despite having been "bothered" by dust, which Dresser urges to overcome the *Magro* presumption, is also advanced as justification for a jury instruction on contributory negligence. But since it introduced no evidence of Lee's awareness of the lethal qualities of silica under prolonged exposure, Dresser's argument amounts to no more than a claim that Lee was negligent in failing to discover this danger, and under longstanding Texas law that argument must fail.

With the elitist view that our safety laws should afford less security to the poorly educated or those who endure a hot workplace, the majority has indeed provided a sweeping new statement of the law regarding failure to warn. But the most significant warning of today's opinion is the further indication that our Texas jurisprudence is being eroded as

---

7. In its discussion of this rule, the majority "assum[es]" that the rule "is correct." 880 S.W.2d at 755. Perhaps if the majority would focus its attention on the opinion of the court in *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91 (Tex.1988), instead of on the dissenting and concurring opinions, *id.*, it would see that "assumption" is not necessary—the rule in Texas is and remains that a plaintiff has no duty to discover defects in a product or to guard against their existence.

**759**

each week the protection afforded to Texas consumers and product users is steadily weakened. As a variant on its continuing trend of disavowing precedent,[8] the majority chooses here to eviscerate the relevant body of law that we have previously announced, leaving as a remainder little more than the empty shells of these otherwise controlling authorities.

GAMMAGE and SPECTOR, JJ., join in this dissenting opinion.

---

**8.** *See, e.g., Ruiz v. Conoco,* 868 S.W.2d 752, 760 (Tex.1993) (Hightower, J., dissenting on rehearing) (majority effectively overruling the leading authority on venue "without discussion or explanation"); *National Tank Co. v. Brotherton,* 851 S.W.2d 193, 195 (Tex.1993, orig. proceeding) (substantially "alter[ing] the controlling law" by rejecting three prior Supreme Court decisions); *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 n. 10 (Tex.1993) (attempting to explain that the opinion *only* overrules one Supreme Court decision, rather than four); *Boyles*

*v. Kerr,* 855 S.W.2d 593, 595–96 (Tex.1993) (overruling decision creating cause of action for negligent infliction of emotional distress); *Walker v. Packer,* 827 S.W.2d 833, 841–42 (Tex.1992, orig. proceeding) (expressly "disapproving" a large body of Texas caselaw); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,* 826 S.W.2d 489, 520 n. 37 (Tex.1992) (disavowing a prior opinion signaling the constitutionality of consolidating school district tax bases); *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 5–6 (Tex.1991) (ignoring recent precedent, looking instead to overruled case).