**BECTON DICKINSON AND COMPANY, American Home Products Corporation, Tyco International (U.S.), Inc. a/k/a Tyco International Ltd., and Sherwood Medical Company, Appellants,**

v.

**Joan USREY and Sue Wang, Appellees.**

**No. 2–00–052–CV.**

Court of Appeals of Texas, Fort Worth.

Aug. 16, 2001.

Fulbright & Jaworski, L.L.P., Jonathan B. Skidmore, Dallas, W. Wendell Hall, San Antonio, Paul, Weiss, Rifkind, Wharton & Garrison, Leslie Gordon Fagen, Robert A. Atkins, and Eric Alan Stone, New York, New York, for Appellant Becton.

Dehay & Elliston, L.L.P., Gary D. Elliston, Dallas, Clark, Thomas & Winters, P.C., Michael R. Klatt and David C. Duggins, Austin, Williams & Connolly, L.L.P., John W. Vardaman and Steven M. Farina, Washington, D.C., for Appellants American home Products, Sherwood and Tyco.

Jose, Henry, Brantley & Keltner, L.L.P., John S. Jose, David E. Keltner, and Karen S. Precella, Fort Worth, TX, Springer, Lyle & Watt, L.L.P., and Jeff Springer, Denton, Simpson & Boyd, P.L.L.C., Michael A. Simpson and Derrick S. Boyd, Bridgeport, for Appellees.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

CAYCE, Chief Justice.

### Introduction

The issue in this interlocutory appeal is the propriety of certifying a class action of Texas health care workers who sustained a needlestick from an exposed, hollow-bore sharp needle already used on a patient and ready for disposal. Appellees claim that all syringes and needle-bearing medical devices manufactured by appellants Becton Dickinson and Company and Sherwood

Medical Company[1] are defectively designed, and they seek reimbursement for the cost of their post-needlestick testing. The class members do not seek mental anguish, emotional distress, or personal injury damages. Health care workers who have been infected with a blood-borne pathogen or who were stuck with a needle from a person known to be infected are excluded from the class.

Appellants contend that the trial court abused its discretion in certifying the class because (1) the common issues do not predominate over the individual issues; (2) a class action is not superior because the case will be impossible to manage and the federal government has provided the relief sought in the class action; (3) the named plaintiffs do not have typical claims and are not adequate representatives; and (4) blood collection devices should not have been included because no class representative claims to have been injured by such a product.

Because we conclude that common issues do not predominate in this class, we reverse the trial court's order and remand this cause to the trial court for further proceedings consistent with this opinion.

## Factual and Procedural Background

On April 9, 1998, Andrea Calvin and Debra Kale filed this strict product liability action on behalf of a class of Texas health care workers who accidently stuck themselves with syringes and other needle-bearing medical devices. The plaintiffs' original petition alleges that all conventional syringes and blood collection devices manufactured by Becton[2] and Sherwood[3] are defectively designed and that there are alternative designs available that prevent needlesticks. The class specifically excluded claims for damages for having contracted an infectious disease from a contaminated stick. One of the original plaintiffs nonsuited in 1998 and the other nonsuited in 1999. In November of 1998, three additional plaintiffs were joined, Aniagu Nwafor, Joan Usrey, and Sue Wang. Nwafor later nonsuited. Therefore, only two plaintiffs are left, Usrey and Wang.

The lone injury alleged is economic—appellees seek reimbursement for the reasonable cost of various tests they had after their needlesticks.[4] Appellees were tested for HIV and hepatitis and found to be "negative for blood borne pathogens."

In May of 1999, appellees filed their motion for class certification. On January 13, 2000, the trial court granted the motion, certifying the class with two class representatives under Rule 42(b)(4) of the Texas Rules of Civil Procedure. The trial court ordered that the case proceed as a

---

1. Sherwood, formerly a subsidiary of American Home Products Corporation, is now a division of Tyco International (U.S.), Inc. a/k/a Tyco International Ltd.

2. Becton manufactures and markets more than one thousand different syringes and other needle products for injections, specimen collection, blood banking and transfusions, insulin treatment, intravenous therapy, biological and virological diagnostics, biopsies, and angioplasty.

3. Sherwood manufactures and markets hypodermic needles and syringes under the "Mo-

noject" brand name and many other needle products.

4. It is undisputed that appellees are entitled to be reimbursed for the reasonable costs of testing or be tested free of charge. Federal law requires health care employers to provide all such tests "at no cost to the employee." Labor, 29 C.F.R. § 1910.1030(f)(1) (1998). These regulations mandate that following a needlestick accident, hospitals and clinics "shall ensure that all medical evaluations" and "all laboratory tests" are provided "at no cost." *Id.*

class action on behalf of those persons who:

i. Were working in the health care industry ("health care workers" or "HCWs") in the State of Texas as either an employee or volunteer; and

ii. Between the period beginning two years prior to the filing of Plaintiffs' Original Petition on April 9, 1998, and ending on the date of this Order, by virtue of their work, were stuck with a needle used with a standard (non-safety) syringe device or standard (non-safety) blood collection device manufactured by Becton Dickinson & Co. or by Sherwood Medical Co.; and

iii. Were stuck after such needle was withdrawn from a patient and ready for disposal; and

iv. Reported the stick as shown by an accident report, medical record, or other record kept at or within a reasonable time after the stick occurred.

At appellees' request, the trial court also excluded from the class all claims and claimants who contracted an infectious disease from a needlestick, and all claims and claimants who were stuck by a needle withdrawn from a patient who was known by or came to be known by the claimant as a person who was infected with a bloodborne pathogen. The trial court's certification order further provides that the common fact issues to be tried in regard to the strict liability claim would include:

[W]hether a design defect exists in regard to the standard syringes or blood collection devices of Becton Dickinson & Co. or Sherwood Medical Co., whether any such defect as to the standard syringes or blood collection devices of Becton Dickinson & Co. or Sherwood Medical Co. was a producing cause of needlestick injuries, and the reasonable charges for necessary testing and treatment of the Class members' needlestick injuries.

On February 1, 2001, appellants filed this interlocutory appeal seeking to reverse the certification order on the ground that the prerequisites to class certification, most notably the requirement that common issues predominate over individual ones, are not met.

At the time the class was certified by the trial court, Texas law allowed trial courts the flexibility of granting certification of a class even when presented with significant individual issues. Russell T. Brown, Comment, *Class Dismissed: The Conservative Class Action Revolution of the Texas Supreme Court*, 32 St. Mary's L.J. 449, 455–56 (2001). This court, for example, indulged every presumption in favor of the trial court's ruling, viewed the evidence in the light most favorable to that ruling, and frankly acknowledged that if the trial court erred, "it should err in favor and not against the maintenance of the class action since the class certification order is always subject to modification should later developments during the course of the trial so require." *Life Ins. Co. v. Brister*, 722 S.W.2d 764, 774–75 (Tex.App.—Fort Worth 1986, no writ). During the pendency of this interlocutory appeal, however, the Texas Supreme Court decided *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425 (Tex.2000), in which the court expressly rejected this liberal "certify now and worry later" approach, and adopted the much more conservative approach to class certification implemented in federal class action jurisprudence. *Id.* at 434–35 (discussing with approval strict standards of certification adopted in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997)).

On June 5, 2000, this court abated the case and ordered the trial court to adopt a trial plan to comply with the supreme court's instruction in *Bernal* that the certification order indicate how the claims will likely be tried "so that conformance with Rule 42 may be meaningfully evaluated." *Id.* at 435. By order signed June 30, 2000, the trial court adopted a "Class Action Management Plan." Under the plan, the trial court ordered that the following common issues regarding defect, causation, and damages would be decided by a single jury in a single trial:

1. Whether the exposed post-use needlepoint on the subject device constitutes a defective condition;

2. Whether there is a safer, alternative design[5] to the subject device;

3. To what extent the utility of the subject device is adversely affected by a design alternative;

4. To what extent the risk of needlestick is reduced by the addition of a design alternative;

5. Whether, and to what extent, a safer, alternative design is feasible technologically;

6. Whether that exposed, post-use needle point is a producing cause of the needlestick injuries;

7. What is the reasonable market value of necessary initial medical testing.

The trial plan also provides that the comparative responsibility of absent class members and third parties will not be submitted to the class action jury, but will be decided by the court on summary judgment. Based on a "claim form," the plan provides that the trial court will either enter a summary judgment against appel-

lants and dismiss their comparative fault defenses, or exclude from the class those claims that the court finds raise comparative fault issues.

Appellants challenge the trial court's class action management plan on several grounds, including that it will deprive appellants of full discovery and that it excludes claimants whose claims may raise triable comparative responsibility defenses after resolution of the class action, in violation of the supreme court's decisions in *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444 (Tex.2000) and *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398 (Tex.2000).

### Standard of Review

The review of a trial court's class certification order is limited to determining if the trial court abused its discretion. *Adams v. Reagan,* 791 S.W.2d 284, 287 (Tex.App.—Fort Worth 1990, no writ). An abuse of discretion is found in cases where, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Id.* An abuse of discretion may also occur when the trial court has failed to properly apply the law to the undisputed facts. *RSR Corp. v. Hayes,* 673 S.W.2d 928, 930 (Tex.App.—Dallas 1984, writ dism'd). In conducting this review, an appellate court must view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action. *Entex v. City of Pearland,* 990 S.W.2d 904, 909 (Tex.App.—Houston [14th Dist.] 1999, no pet.). An appellate court may not substitute its judgment for that of the trial court, even if it would determine the issues differently than the trial court. *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 149 (Tex.

**5.** The plaintiff in a product design defect case must prove that there is a "safer alternative design" that "would in reasonable probability have prevented or significantly reduced the risk of the claimant's injury or damage." *Hernandez v. Tokai Corp.,* 2 S.W.3d 251, 258 (Tex.1999).

App.—Austin 1995, writ dism'd w.o.j.). We defer to the trial court's factual determinations so long as they are properly supported by the record while reviewing its legal determinations de novo. *Remington Arms Co. v. Luna,* 966 S.W.2d 641, 643 (Tex.App.—San Antonio 1998, pet. denied).

### Class Action Requirements Under Rule 42 as Interpreted by *Bernal*

 There is no right to litigate a claim as a class action. *Bernal,* 22 S.W.3d at 439. Rather, all class actions must satisfy the requirements of Rule 42 of the Texas Rules of Civil Procedure. *Id.; see Sun Coast Res., Inc. v. Cooper,* 967 S.W.2d 525, 529 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.) (op. on reh'g); *accord Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.); *Vinson v. Tex. Commerce Bank,* 880 S.W.2d 820, 825 (Tex.App.—Dallas 1994, no writ). Because Rule 42 is patterned after Federal Rule of Civil Procedure 23, federal decisions and authorities interpreting federal class action requirements are persuasive authority. FED.R.CIV.P. 23; *see RSR Corp.,* 673 S.W.2d at 931–32.

"Courts must perform a 'rigorous analysis' before ruling on class certification to determine whether all prerequisites to certification have been met." *Bernal,* 22 S.W.3d at 435 (citing *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). Under Rule 42(a) there are four threshold requirements that all class actions must satisfy: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the repre-

sentative parties will fairly and adequately protect the interests of the class"). TEX.R. CIV. P. 42(a).

In addition to these threshold requirements, class actions must satisfy at least one of four subdivisions of Rule 42(b). In this case, appellees rely upon subdivision (4) of Rule 42(b), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* 42(b)(4). To aid us in determining if Rule 42(b)(4) certification is appropriate, the rule establishes a list of nonexhaustive factors to consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

In *Bernal,* the Texas Supreme Court noted that "[t]he predominance requirement is intended to prevent class action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses." 22 S.W.3d at 434. To implement this "check on the flexible commonality test under Rule 42(a)(2)," the supreme court emphasized that we must strictly adhere to the guidelines of the predominance test, which the court described as follows:

The test for predominance is *not* whether common issues *outnumber* uncommon

issues but, as one court stated, whether common or individual issues will be the object of *most of the efforts* of the litigants and the court. If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate. Ideally, a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim.

*Id.* at 434–35 (emphases supplied) (internal quotations and citations omitted); *see also Henry Schein, Inc. v. Stromboe*, 28 S.W.3d 196, 203–04 (Tex.App.—Austin 2000, no pet.).

The *Bernal* court explained, however, that the predominance test will rarely allow class actions in mass-tort personal injury situations. The court said:

Personal injury claims will often present thorny causation and damage issues with highly individualistic variables that a court or jury must individually resolve. *See generally Amchem Prods., Inc.*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 [1997]. Thus, the class action will rarely be an appropriate device for resolving them. The drafters of Federal Rule 23(b)(3), the counterpart to our Rule 42(b)(4), recognized this when they observed that personal injury claims are generally inappropriate for class certification:

A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

39 F.R.D. 69, 103 (1966).

22 S.W.3d at 436.

Suits involving allegedly defective medical devices may be among the weakest candidates for certification when the predominance test is rigorously applied in the manner required under *Bernal*. As the Ninth Circuit Court of Appeals recognized, multi-accident, medical-device tort litigation is ill-suited for class treatment because there is no single event, cause, or defense:

No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case.

*In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir.1982), *cert. denied sub nom. A.H. Robins Co. v. Abed*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

## Common Issues Do Not Predominate

Examining the facts of this case through a prism of "rigorous analysis," we conclude that causation and comparative responsibility issues will be individual to each class member. The evidence shows that needlestick injuries occur in a variety of unique circumstances involving the fault of the health care worker using the device, their employers, and third parties. For example, Usrey, one of two class representatives, claims that while discarding a syringe in a wall-mounted "sharps" dis-

posal container, she was stuck by a needle that was sticking out of the box. She contends that the container was not assembled correctly, and as a result, the needle "somehow jump[ed]" through an opening between the lid and the body of the container. Usrey admitted that the overfilled disposal container violated the hospital safety policy, which required that containers be removed when two-thirds full. Usrey also accepted blame for the container being overfilled and agreed that she "would bear the responsibility for that violation of hospital policy."

Usrey also failed to follow the "BIOHAZARD WARNING" posted on the front of the container: "To avoid injury, examine the collector *carefully* before you fill...." Usrey admitted that by failing to examine the container before using it, she exposed herself to the risk that "a needle might be sticking out" and that she "might get stuck." There is also evidence that the hospital may have contributed to Usrey's accident by installing the disposal container too high on the wall.

The other class representative, Wang, alleges that she stuck herself with a syringe that a coworker had left in the steel basin behind a radio in an operating room. According to Wang, she tried to adjust the radio and stuck her hand on a syringe needle lying in the basin. Six to eight syringes had been improperly discarded in the basin from at least two previous eye surgeries. Wang admitted that leaving the needles in the basin was "reckless and irresponsible" and "a violation of the standard of care." Wang's incident report confirms that an "Unsafe Act Caused or Contributed to this Incident ... needle not placed in dirty needle container as quickly as it could have been."

The evidence also shows that the needlesticks of absent class members will present distinct facts and disparate causes, including employee negligence and employer fault. One expert assembled for the trial court a compilation of needlestick incident reports from Texas that shows needlesticks most often happen in some "unusual circumstance," and "in most cases there are contributory causations." The reports indicate that many needlestick accidents are caused by health care workers who misuse products—such as using a syringe as a doorstopper or a needle as a retractor. The reports also show that needlesticks are caused by employers or coworkers who violate government and hospital safety standards—such as discarding a blood collection needle in a soap box or installing a needle disposal container out of reach. Other testimony established that even needle devices with safer alternative designs would not prevent needlesticks in cases where the safety feature could not be activated, such as when a "needle slipped" or a "patient jerked."

■ We therefore conclude as a matter of law that individual causation and comparative responsibility issues predominate over common ones in this class. A trial of Usrey's and Wang's claims would answer the questions of whether there was a design defect in the specific needle device products used in Usrey's and Wang's cases, and whether the alleged defects in those devices were a producing cause of the needlestick injuries sustained by Usrey and Wang, but, it would not establish for all class members that the alleged design defects were the sole producing cause of harm to each member, or that, and to what extent, other factors or persons contributed to the alleged needlestick injuries.

Appellees contend that the causation issues are common to the class and will predominate over any individual causation issues, because most needlestick injuries are caused by an exposed needle left unshielded after use due to design defect. In

support of this assertion, appellees direct us to expert testimony and other evidence showing that the majority of post-use needlestick injuries are caused by unsafely exposed needles, rather than negligent handling or disposal by health care workers and others. According to appellees and the trial court, other alleged causes of accidental needlestick injuries "will not be a factor," because the producing cause of the needlestick injuries is the alleged defect in the needle device products.[6] We believe this argument oversimplifies the issue of causation in a product defect case.

In a product liability case, "[a] defendant is entitled to try to convince the jury that not only did it *not* cause plaintiff's injuries, but someone else *did.*" *Dresser Indus., Inc. v. Lee,* 880 S.W.2d 750, 753 (Tex.1993). The question the jury will be instructed to answer under Texas law in this case is not simply whether an exposed unshielded needle was a producing cause of each needlestick injury, but, assuming the exposed unshielded needle is the result of a defect in the design of a particular needle device, whether someone other than appellants is legally responsible for causing the needlestick injury. *E.g., Gen. Motors Corp. v. Sanchez,* 997 S.W.2d 584, 595 (Tex.1999) (party other than defendant may be found at fault, even if product is defective); *Nat'l Union Fire Ins. Co. v. Kwiatkowski,* 915 S.W.2d 662, 665 (Tex. App.—Houston [14th Dist.] 1996, no writ)

(nonparty may be sole producing cause); *Gutierrez v. Dresser Indus., Inc.,* 769 S.W.2d 704, 706 (Tex.App.—Corpus Christi 1989, no writ) (plaintiff not only has burden to prove defect but also that defendant was producing cause of plaintiff's injuries); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.001–.004 (Vernon 1997). Thus, the care exercised by class members and others, including employers and co-workers, when handling the needle devices is a factor that "must be considered in allocating responsibility for the injury." *Hernandez,* 2 S.W.3d at 257; *see Dresser Indus.,* 880 S.W.2d at 752–55.

Even assuming appellees proved their theory at trial as characterized by the trial court[7]—that defective needle devices are "*a* producing cause of the needlestick injuries" [emphasis supplied]—the evidence that many needlesticks are caused by the fault of health care workers, their employers, and third parties, and that a safer design would not prevent needlestick accidents from occurring in cases where the safety feature was not activated, demonstrates that highly individualistic causation and comparative fault issues related to each class member would remain unresolved and certification would be improper.

Appellees also contend that appellants are barred from asserting the comparative responsibility of class members under

6. In its Class Action Management Plan, the trial court stated that "comparative responsibility under the unique facts of this case will not be a factor," because "the needlesticks would not have occurred but for the design defect." It was, however, inappropriate for the trial court to decide the "paramount liability question" of whether the alleged design defect is the legal cause of needlestick injuries for the purpose of maintaining the class. *See Intratex,* 22 S.W.3d at 404–05 ("Deciding the merits of the suit [at the certification stage] in order to determine ... its maintainability as a class action is not appropriate."). Even if it

was proper for the trial court to make such a determination at the certification stage, its conclusion that as a matter of law there would be no comparative responsibility issues for the fact finder to decide is clearly erroneous in view of the conflicting evidence presented on that issue.

7. *Cf. Life Ins. Co.,* 722 S.W.2d at 774–75 (giving deference to trial court's characterization of plaintiff's theory rather than defendant's interpretation of plaintiff's cause of action in reviewing class certification order).

comment n to Restatement (Second) of Torts section 402A. We disagree. In *General Motors Corp. v. Sanchez*, the Texas Supreme Court reaffirmed that under comment n a plaintiff has no duty to discover or guard against a product defect. 997 S.W.2d at 594; *see also* RESTATEMENT (SECOND) OF TORTS § 402A cmt. n (1965) (noting that plaintiff's contributory negligence is not defense when "negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence"). The supreme court, however, expressly held that a plaintiff's comparative fault should otherwise be considered in a product defect case. *Gen. Motors Corp.*, 997 S.W.2d at 594. The court said:

> Public policy favors reasonable conduct by consumers regardless of whether a product is defective. A consumer is not relieved of the responsibility to act reasonably nor may a consumer fail to take reasonable precautions regardless of a known or unknown product defect. We therefore disapprove of [*Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91, 92–93 (Tex.1988) ] to the extent it suggests that the failure to discover or guard against a product defect is a broad category that includes all conduct except the assumption of a known risk.

*Id.* Therefore, under the supreme court's interpretation of comment n, it remains for a jury to decide whether, in the unique circumstances of each individual case, a plaintiff's unreasonable behavior, product misuse, or a breach of safety standards is the legal cause of the needlestick accident. *See id.; see also Hernandez*, 2 S.W.3d at 257; *Dresser Indus.*, 880 S.W.2d at 755.

### The Trial Court's Plan for Resolving Individual Comparative Fault Issues is Unfair and Unduly Restrictive

■ The procedures adopted by the trial court for handling individual issues of comparative fault do not cure the error in the class certification order. In its Class Action Management Plan, the trial court ruled that it would allow comparative fault issues to be submitted in the trial on the merits of the class representatives' claims. Recognizing, however, that comparative fault issues must be individually resolved as to all absent class members, the trial court created a novel summary judgment scheme involving the use of "claim forms" to be completed by prospective class members. According to this scheme, appellees would file no-evidence motions for summary judgment on appellants' defenses of comparative fault using the completed claim forms as summary judgment evidence. The trial court would then consider each case in which appellants raised a comparative fault defense by ruling on the no-evidence motion for summary judgment. In cases in which the trial court determined there was insufficient evidence to reach a fact finder, a partial summary judgment would be rendered on the comparative fault issue. In those instances in which the trial court determined there was sufficient evidence to reach a jury, the trial court would sever those cases for a complete "de novo trial." Importantly, the claim forms would be the only means of discovery allowed under the plan, unless the trial court granted a request for additional discovery. In *Bernal*, the supreme court stated that "class actions do not exist in some sort of alternative universe outside our normal jurisprudence." 22 S.W.3d at 432. As appellants point out, the summary judgment scheme adopted by the trial court in this case does not exist anywhere in the universe of Texas law. Instead, it creates an "alternative universe" where normal jurisprudential rules and principles do not apply, and where the rights and protections afforded other product liability defendants, such as full and fair discovery, cross-examination of wit-

nesses, and trial by jury, would be unfairly restricted, if not entirely denied. *See generally In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex.1998) (orig.proceeding) (vindicating defendants' rights in mass tort cases to case-by-case discovery on basic causal information); *Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex.1995) (orig.proceeding) (same). "Any proposal to expedite resolving individual issues must not unduly restrict a party from presenting viable claims or defenses without that party's consent." *Bernal*, 22 S.W.3d at 435; *see also* Tex.R. Civ. P. 815; Tex. Gov't Code Ann. § 22.004(a) (Vernon Supp. 2001).

### Conclusion

For the above reasons, we hold that the trial court's certification order was an abuse of discretion because common issues do not predominate. Accordingly, we need not consider appellants' other objections to the class action or the trial plan.

We reverse the trial court's class certification order and remand the cause for further proceedings consistent with this opinion.

LIVINGSTON, J., dissents with opinion.

TERRIE LIVINGSTON, Justice, dissenting to denial of motion for rehearing en banc.

I respectfully dissent from this court's failure to grant rehearing en banc in this case. *See* Tex.R.App. P. 47.5. I believe our court was in error in reaching the merits of the trial court's class certification order because there is no justiciable controversy involved.

In reviewing a trial court's propriety in certification of a class on appeal, one of the preliminary questions the reviewing court must address is whether a justiciable controversy exists and whether the named plaintiffs have standing to pursue it. *In re M.M.O.*, 981 S.W.2d 72, 81 (Tex.App.—San Antonio 1998, no pet.). Before a plaintiff may be entitled to represent a class under rule 42, the plaintiff must show she has standing to bring the suit. Tex.R. Civ. P. 42; *M.M.O.*, 981 S.W.2d at 81. A court should only decide those cases that involve live issues where the parties have an interest in the outcome. *M.M.O.*, 981 S.W.2d at 81. If the claims of the class representatives become moot before they seek class certification, the class action becomes moot. *Id.* (citing *Tarrant County, Tex. Comm'rs Court v. Markham*, 779 S.W.2d 872, 876 (Tex.App.—Fort Worth 1989, writ denied)).

Standing is also a component of a court's subject matter jurisdiction. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex.2001). "Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable." *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex.1994). To be justiciable, the controversy must involve a real controversy between parties that will actually be resolved by the relief sought. *Id.* Texas courts only have jurisdiction over real parties' controversies and may not render advisory opinions. Tex. Const. art. II, § 1, art. V, § 8; *Hanna v. Godwin*, 876 S.W.2d 454, 457 (Tex.App.—El Paso 1994, no writ). A class representative's individual standing is a "factor to consider in deciding whether the named plaintiff would be a proper class representative." *Novak*, 52 S.W.3d at 708. Lack of standing deprives a trial court of subject matter jurisdiction over the plaintiff's individual claims and those of the class. *Id.* at 711. Subject matter jurisdiction cannot be waived and may be raised for the first time on appeal by a party or by the court. *M.M.O.*, 981 S.W.2d at 79–80.

Our review of a trial court's class certification is limited to a review of whether a trial court abused its discretion in ordering class certification. *Henry Schein, Inc. v. Stromboe,* 28 S.W.3d 196, 201 (Tex.App.— Austin 2000, pet. dism'd w.o.j.); *M.M.O.,* 981 S.W.2d at 83–84. However, when we review subject matter jurisdiction, we review that issue de novo because we determine jurisdiction as a matter of law. *Trinity Universal Ins. Co. v. Sweatt,* 978 S.W.2d 267, 269 (Tex.App.—Fort Worth 1998, no pet.) (citing *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999)). One of the preliminary matters encompassed in review of a class certification order necessarily encompasses a determination that a justiciable controversy exists. *M.M.O.,* 981 S.W.2d at 79. That should be the starting point for our review here.

In appellants' sixth issue, they point to appellees' lack of damages; the class representatives have sued to recover the costs of their post-needlestick testing. However, the representatives have conceded that they have not had to pay for any of their testing and that those costs have been covered by their employers. Joan Usrey specifically stated she has incurred no financial harm or injury as a result of her needlestick. Sue Wang testified similarly. Further, according to regulations of the Occupational Safety and Health Administration, healthcare employers are required to pay for and provide testing and treatment at no costs to their employees. Labor, 29 C.F.R. § 1910.1030(f)(1) (1998). Thus, these two remaining class representatives, Usrey and Wang, have incurred no damages despite their pleadings to recover some and, in great likelihood, will incur none of the damages they have pled for in the future. For these reasons, I believe these representatives have no standing to pursue their claims individually or on behalf of the class, no live controversy exists, and any claims they might have had are now moot. Therefore, I would reverse the trial court's class certification order with instructions to dismiss the suit for lack of subject matter jurisdiction.