OPINION
{¶ 1} Plaintiffs-appellees commenced this product liability action seeking to certify a plaintiff class of Ohio health care workers who had suffered accidental "secondary needle sticks," or puncture injuries with a needle contaminated by a patient's blood or bodily fluids, while using "syringe needles or other fixed exposed hollow bore needle devices." (Appellees' complaint, pg. 8, at ¶ 25(B)). Defendant-appellant, Becton Dickinson Co. ("Becton"), is a manufacturer and marketer of a wide variety of hollow-needle products used in health care, specimen collection, blood collection, transfusion, and intravenous therapy.
 {¶ 2} The proposed class representative, appellant Vickie L. Grant, is a nurse who during the course of her work at the Franklin County Correctional Facility was injured when she suffered an accidental needle stick while using a disposable, fixed, exposed, hollow-bore needle syringe manufactured by Becton and contaminated through normal use by blood or bodily fluids of an inmate patient. The syringe she was using did not incorporate a safety mechanism for "immediate point-of-use protection," that is, a design feature which would have enclosed, capped, or otherwise covered the needle immediately after use and reduced or eliminated the risk of an accidental needle stick.
 {¶ 3} Ms. Grant seeks to represent a class composed of health care workers in Ohio similarly injured by comparable Becton standard ("non-safety") syringes, blood collection devices and other needle devices. The suit alleges that such non-safety devices are defectively designed, resulting in unnecessary secondary needle stick injuries to thousands of Ohio health care workers, and create an unreasonable risk of harm that could have been easily prevented by the use of alternative, safer designs incorporating post-use protection for exposed needles. The complaint seeks economic damages in the form of reimbursement for the costs of testing for exposure to HIV, hepatitis, and other blood-borne pathogens. The complaint also prays for punitive damages. Appellees do not propose to include in the plaintiff class any persons who actually contracted disease from an accidental needle stick. The suit does not currently make any claim for emotional distress caused by the fear of contracting disease, or any claim for pain and suffering.
 {¶ 4} The trial court conducted an extensive and thorough hearing on appellees' motion to certify the class. Testimony from eminent and highly qualified experts was presented by both sides on the legal question of whether the class should be certified, as well as on the factual issues surrounding the characteristics of Becton's various products and the conditions under which they are used in the health care industry and under which accidental needle sticks occur. The parties also presented extensive evidence regarding the availability of alternative safety designs, including recently introduced hollow-bore needle appliances marketed by Becton that incorporate safety features to reduce the risk of secondary needle sticks.
 {¶ 5} The trial court rendered a lengthy and detailed decision finding that the requirements for class certification under Civ.R. 23(A) and (B)(3) had been met. The trial court accordingly certified the following class:
 {¶ 6} "All persons who:
 {¶ 7} "A. were physicians, physician assistants, nurses, phlebotomists, technicians, sanitation employees, or other persons working in the health care industry located in the State of Ohio; and
 {¶ 8} "B. between the period beginning two years prior to the filing of Plaintiff's Original Complaint on July 22, 1998, and ending on the date of this Order, by virtue of their work in Ohio, were stuck or impaled with one or more needles with a standard (non-safety) syringe device or standard (non-safety) blood collection device manufactured by Becton Dickinson Company, after withdrawal of the needle from a patient and ready for disposal; and
 {¶ 9} "C. reported the stick; and
 {¶ 10} "D. did not contract an infectious disease from the needle stick."
 {¶ 11} Becton has timely appealed from the trial court's decision, and brings the following single assignment of error:
 {¶ 12} "The trial court abused its discretion in granting plaintiff's motion for class certification."
 {¶ 13} Class actions are governed by Rule 23 of the Ohio Rules of Civil Procedure. The general prerequisites to a class action are set forth in Civ.R. 23(A):
 {¶ 14} "Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
 {¶ 15} In addition, Civ.R. 23(B) sets forth the various types of class actions maintainable once the prerequisites of Civ.R. 23(A) are met. In the present case, the trial court found the class action maintainable under Civ.R. 23(B)(3), often referred to as the "damages action," which provides that an action may be maintained if the following determination is made:
 {¶ 16} "[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."
 {¶ 17} The Ohio Supreme Court has stated that a "trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." Marks v. C.P. Chemical Co., (1987), 31 Ohio St.3d 200, syllabus. "However, the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." Hamilton v. Ohio Sav. Bank (1998), 82 Ohio St.3d 67, 70, citing Gen. Tel. Co. of the Southwest v. Falcon (1982), 457 U.S. 147,160-161, 102 S.Ct. 2364.
 {¶ 18} In interpreting and applying Civ.R. 23, the Ohio Supreme Court has held that, because the Ohio rule is virtually identical with Fed.R.Civ.P. 23 on class actions, "federal authority is an appropriate aid to interpretation of the Ohio rule." Marks, at 201. In determining whether the case may be brought as a class action, the court may not consider the merits of the case except for the limited purpose of determining whether the requirements of Civ.R. 23 are met. Falcon, at 160.
 {¶ 19} The class action provisions of Civ.R. 23 are procedural devices intended to reduce the multiplicity of lawsuits in appropriate instances, and provide an effective means of resolution to representation of disputes involving potentially large numbers of persons. Ojalvo v. Bd. of Trustees of Ohio State Univ. (1984), 12 Ohio St.3d 230, 235:
 {¶ 20} "* * * The class action would seemingly provide the ideal means of adjudicating in a single proceeding what might otherwise become three thousand to six thousand separate administrative actions. This is particularly true where, for any of the number of reasons previously articulated, the individual class members might prefer not to seek redress or could even be unaware of the availability of redress." * * *
 {¶ 21} As such, Civ.R. 23 was designed to give access to the courts for persons without the means to pursue litigation individually, or in instances where, as in small but numerous consumer grievances, the value of each individual lawsuit would not justify litigation. Notwithstanding this remedial nature, " `Rule 23 does not require or contemplate that courts will hear causes of action as class actions merely because they will not get to hear the case any other way.'" Boshes v. General Motors Corp. (1973), 59 F.R.D. 589, 601, quoting Eisen v. Carlisle Jacquelin (1968), 391 F.2d 555, 572 (Lumbard, Chief J., dissenting.) There are accordingly limits to application of Civ.R. 23 which must be considered when granting certification:
 {¶ 22} "* * * [E]ven while we agree that the class action suit is a laudable vehicle which may be used to adjudicate many types of claims that would otherwise remain untried, we cannot say that public policy requires us to certify an action that refuses to lend itself to proper judicial determination as a class action. To do so would work an injustice both on the plaintiff and on the defendant." Gilmore v. Gen. Motors Corp. (Dec. 19, 1974), Cuyahoga App. No. 32726.
 {¶ 23} The party pursuing certification of a class action bears the burden of showing, by preponderance of the evidence, that the prerequisites set forth in Civ.R. 23(A) are present, and that the action falls within one of the categories of Civ.R. 23(B). State ex rel. Ogan v. Teater (1978), 54 Ohio St.2d 235, 247. For purposes of orderly analysis, the explicit and implicit requirements under the rule were best synthesized by the Ohio Supreme Court in Hamilton, supra:
 {¶ 24} There must be (1) an identifiable class capable of unambiguous definition; (2) the named representative must be a member of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact which are common to the class; (5) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; (6) the class representatives must fairly and adequately protect the interest of the class; and (7) the action must meet one or more of the three requirements under Civ.R. 23(B)."
 {¶ 25} Although Becton has taken the precaution of vigorously arguing almost every element of the action with the exception of numerosity, we find that it is the commonality and typicality requirements that are most significant in the present case. These elements also shape to a great degree our consideration of the suitability of the action under Civ.R. 23(B). We will accordingly leave the fourth, fifth, and seventh elements set forth in Hamilton to be discussed last, and will first address, in otherwise numerical order, the other elements.
 {¶ 26} Considering the first element set forth in Hamilton, the Ohio Supreme Court stated as follows: "`[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (2 Ed. 1986) 120-121, Section 1760. Thus, the class definition must be precise enough `to permit identification within a reasonable effort.'" Hamilton, at 71-72, quoting Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91, 96. The class sought to be certified must thus be identifiable. An identifiable class is one that is unambiguous. Warner, at 96. An amorphous class such as "all people active in the peace movement" is not sufficiently identifiable. Id.
 {¶ 27} In the present case, we agree that the class as defined by the trial court is sufficiently definite and identifiable to maintain a class action. Becton argues that the class is ambiguous because individualized factual determinations will be needed to determine whether each potential claimant meets the class criteria, i.e., was (1) stuck by a standard hollow-bore needle device, (2) manufactured by Becton, (3) after withdrawal, when the needle was ready for disposal, (4) reported the stick, but (5) did not contract infectious disease from the stick. We do not find that these factual prerequisites present an insuperable difficulty to identification of the class, although they may affect the commonality and typicality requirements that will be discussed below. Some factual screening is inevitable in determining membership in any plaintiff class, and the factual elements here do not seem out of bounds when compared with comparable product liability class actions. The class as defined is not vague, ambiguous, or amorphous, and we accordingly find no abuse of discretion on the part of the trial court in finding that the first element of Hamilton is met.
 {¶ 28} The second element under Hamilton is that the proposed class representative be a member of the class. Becton argues that Grant is in fact not a member of the class because the class, as defined, is limited to victims of needle stick accidents that occurred "after withdrawal of the needle from the patient and ready for disposal." Becton stresses that Grant described her injury as occurring while she was "still in the midst of performing the procedure." (Grant depo., at 193.) A full reading of Grant's account of the needle stick she suffered reveals the following sequence of events: Grant was preparing to inject an inmate with tuberculosis vaccine. She cleaned the top of the vaccine vial with an alcohol-soaked cotton swab. She cleaned the injection site on the inmate's arm with the same swab. She then drew up the vaccine from the vial into the syringe. After giving the injection site another quick swipe with the alcohol swab, she pulled the skin taut and made the injection. As she withdrew the needle with her right hand, she again picked up the alcohol swab with her left hand and wiped the injection site to decrease the risk of infection from the injection just administered. In doing so, she accidentally stuck her left index finger, then holding the swab, with the syringe needle held in her right hand.
 {¶ 29} Becton's contention is that, because Grant was not quite to the point in the procedure where she would have turned from the patient and disposed of the needle in the appropriate sharps disposal container, she is not a member of the class as defined, since the syringe was not "ready for disposal." We find this to be a distinction without a difference. The syringe had been used, that is, inserted into and withdrawn from the patient. The next step in the syringe use cycle was disposal. It was not to be reused for another patient, nor of any further utility to the health care worker employing it. Regardless of whether Grant was actively in the process of disposing of the syringe, it was "ready for disposal." We accordingly find that Grant can be found to be a member of the class. The trial court did not err in finding that the second element of Hamilton is met in this case.
 {¶ 30} The third element to be shown under Hamilton is that the class is too numerous to permit joinder of all members. Becton does not dispute on appeal that this element is met in the present case.
 {¶ 31} The sixth element under Hamilton is that, pursuant to Civ.R. 23(A)(4), the proposed class representative fairly and adequately protect the interest of the class members, and that counsel for the class must be qualified, experienced, and generally competent to conduct the proposed litigation. Hamilton, at 78; Warner, at 98. The experience and competence of counsel for plaintiffs in the present case is not contested by Becton, and indeed there is nothing in counsel's qualifications which would lead us to question the trial court's conclusion that counsel can ably prosecute the case.
 {¶ 32} With respect to the adequacy of Vickie L. Grant as a class representative, Becton's objections are primarily based on two factors: that she has neglected to pursue all claims available to members of the class because she specifically dropped her claim for emotional distress, and that variations between the circumstances of her accidental needle stick and those of others of the class vary factually to the point that her accident is atypical, and her interests are not therefore aligned with other members of the proposed class.
 {¶ 33} With respect to the decision to abandon the pursuit of damages for emotional distress, it is clear in the present case that this was done in order to refine the class definition and make it more amenable to class certification. This justifiable tactical decision does not create an interest adverse to the rest of the class, but represents an effort to ensure that the class may proceed with the litigation at all. It does not, therefore, create the conflict alleged between Grant and other class members. With respect to any factual variations between Grant's injury and those of other class members, this goes less to Grant's adequacy as a class representative than to the commonality and typicality requirements generally. The circumstances of her injury appear to fall within the scope of injuries proposed for the class as it is presently defined. If commonality is found for the class, a question which will be discussed next, then Grant is an adequate representative for the class.
 {¶ 34} We now turn to the fourth and fifth elements under Hamilton, those of commonality and typicality. In practice, the two requirements will necessarily overlap to some extent and are often discussed together:
 {¶ 35} "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, at 158, fn. 13. See, also, 1 Newberg on Class Actions (1992), 3-127 to 3-128, Section 3.22. We nonetheless find it preferable in the present case to give these requirements separate attention as far as is possible.
 {¶ 36} The commonality requirement of Civ.R. 23(A)(2) will be met by the presence of a common nucleus of operative facts, or by showing that questions of law or fact are common to the class. Marks, at 202. Commonality may be found where the basis for liability is common to the proposed class, Ojalvo, supra, at 235, or where a common factual question exists on issues of negligence, breach of contract, illegal practice, or other applicable causes of action, Warner, at 97. "The issue of whether there are any additional questions affecting only individual class members does not enter the class certification analysis until the Civ.R. 23(B)(3) requirement of predominance and superiority is applied." Hamilton, at 77. "It is important to note that this provision does not demand that all the questions of law or fact raised in the dispute be common to all the parties." Marks, at 202. (Emphasis added.)
 {¶ 37} The trial court in the present case found that three questions common to the class existed: (1) a design defect in the products manufactured by Becton, which (b) proximately caused the injuries suffered by members of the proposed class, and (3) led to damages of a similar nature in the members of the class. In particular, the trial court found that:
 {¶ 38} "[A]ll Becton devices included in the proposed class * * * are `common': they all utilize hollow-bore needles with sharp points. The only difference is the size and function of the needles and the syringes or blood collection devices in which the needle is located. The claim defect of each is the same — a sharp hollow-bore needle is left exposed after use, increasing the likelihood of an inadvertent or accidental stick." (Dec., at 20.) The trial court also accepted plaintiffs' expert's opinion that the availability of safer alternatives was a common question, and that sufficient evidence had been presented to establish that safer designs exist for all hollow-bore needle devices proposed for inclusion in the class.
 {¶ 39} Becton asserts on appeal that the trial court erred in addressing the evidence on these issues, and that because there existed a multiplicity of different types of needle devices "thousands" according to Becton, perhaps ten according to plaintiffs — a design defect cannot be common to all of them, either in the physical nature of the design or in the practicality of alternative "safety" designs in all the varying uses for the different types of devices. Becton's position is that the circumstances under which the different types of devices are used, and the circumstances of each needle stick incident, raise questions that are not common across the class regarding the degree of defect of each design. Becton further argues that, product variations aside, the different circumstances under which each class member's injury occurred will raise multiple factual issues not common to the class, such as the availability for each incident of defenses such as contributory negligence or intervening third-party negligence.
 {¶ 40} We will first examine the impact of the differences between the various Becton products that are at issue in this suit. Under Ohio product liability law, a product is defective if "the foreseeable risks associated with its design * * * exceed the benefits associated with that design." * * * R.C. 2307.75(A)(1). This is known as the risk-benefit test. The statute provides seven factors specific to each product which must be considered, including the "magnitude of the risks of harm," the "extent to which [the] design * * * conformed to any applicable public or private product standard," the "intended or actual utility of the product," and the "technical and economic feasibility * * * of using an alternative design." R.C. 2307.75(B) and (C).
 {¶ 41} The evidence presented by both parties in the present case, although characterized differently by each for purposes of this appeal, consistently describes a number of different products with substantially differing physical characteristics and intended uses, and consequently presenting a wide variation in risks and benefits from normal use. Expert testimony presented by Becton, and not specifically contradicted by Ms. Grant, described different rates of accidental needle sticks varying widely by device type. Becton's expert testified that the risk of an accidental needle stick while using a blood-collection device was quite different from using a syringe, and that among syringes the risk would vary by size and type as well.
 {¶ 42} Similarly, the utility and benefit of using the different devices was described as varying widely. Because both the risk of a secondary needle stick occurring and the utility benefit attributable to each device can vary, the risk/benefit analysis for the various products cannot be reduced to the simple common fact that all products present a hollow-bore needle that is unprotected after use.
 {¶ 43} Ms. Grant also presented expert testimony that safety alternatives existed for each product described in the class. While Becton's experts disputed the availability or practicality of these improvements, we do find that there was sufficient evidence from which the trial court could conclude that needle safety devices existed, at least in design or prototype, for all of the various devices described. However, this is only one aspect of the risk/utility test. The cost and feasibility of incorporating these proposed safety devices into the different Becton products at issue would vary widely, all experts agreed, depending upon the different functions and applications of the various hollow-bore needle products, and the necessarily different designs and intended conditions of utilization involved therewith. Thus, the question of whether there was a "practical and technically feasible alternative design" that "would have prevented the harm," R.C. 2307.75(F), would become an excessively individualized question varying from product to product in the present case. It is not the simple existence of safer designs, but their effect for each product on the risk/benefit test, that is determinative.
 {¶ 44} We are therefore in agreement with the conclusion of a federal court which recently denied class certification in a similar action in New York State against Becton:
 {¶ 45} "Plaintiffs' notion that each conventional needle device imposes an unreasonable risk of needlesticks does not manufacture a common issue. Their argument that all the products share the same defects sweeps too broadly. Each product may be defective, but that is an individual determination and not a common class-wide one." Benner v. Becton Dickinson Co. (S.D.N.Y. Mar. 28, 2003), No. 4785, slip opinion, at 10. We accordingly find that commonality sufficient to support certification of a plaintiff class does not exist if the class is to span all the various Becton products at issue.
 {¶ 46} We are less persuaded, however, by Becton's arguments with respect to proximate cause and the availability of individualized defenses based on varying factors in each class member's needle stick injury. We acknowledge that experts testified, without contradiction, that needle sticks occur under a wide variety of circumstances, and that sometimes the contributory negligence of the health care worker in misusing the device, or of negligence on the part of employers or other parties (e.g., provision of inappropriate or defective sharps disposal containers) could be found to be the proximate cause of the accidental needle stick. Based on this, Becton's position is that the circumstances of each class member's injury could accordingly vary to the point that the common nucleus of operative fact does not exist, or, rather, to the point that the common existence of hollow-bore needle devices in every needle stick incident did not rise to the level of a common nucleus of operative facts.
 {¶ 47} Becton relies heavily for this proposition upon another companion case, in which the Texas Court of Appeals found that common questions were insufficient to maintain a class action:
 {¶ 48} "A trial of [class representatives] Usrey's and Wang's claims would answer the questions of whether there was a design defect in the specific needle device products used in Usrey's and Wang's cases, and whether the alleged defects in those devices were a producing cause of the needlestick injuries sustained by Usrey and Wang, but, it would not establish for all class members that the alleged design defects were the sole producing cause of harm to each member, or that, and to what extent, other factors or persons contributed to the alleged needlestick injuries." Becton Dickinson and Co. v. Usrey (2001), 57 S.W.3d 488, 495.
 {¶ 49} Courts have differed in the weight to be given the availability of potential individual defenses raised by a class action defendant against various members of the plaintiff class. To the Texas court in Usrey, this obviously was a determinative factor in disagreeing with the trial court's findings of commonality and typicality, and consequently decertifying the class. It must be noted, however, that Usrey represented a distinct shift in Texas law on class actions, which had previously reflected a more permissive approach to certification. See, Russell T. Brown, Comment, Class Dismissed: The Conservative Class Action Revolution of the Texas Supreme Court (2001), 32 So. Mary's L.J. 449. Nonetheless, concordant authority is readily available from other states: see, e.g., Banks v. Carroll Graf Publishers (1999),267 A.D.2d 68-69, 699 N.Y.S.2d 403 ("However, close examination shows that, because each of the claims would require individualized proof concerning the various bases for liability and are subject to individualized defenses, commonality is lacking notwithstanding any pattern of conduct [by the defendant].)"
 {¶ 50} However, after due consideration of available authority, we do not believe that the restrictive shift exemplified by Usery has been reflected in a preponderance of federal or state courts or, more pertinently, by decisions of the Ohio Supreme Court. Individual defenses were recently rejected as an absolute bar to a finding of commonality in Baughman v. State Farm Mut. Auto Ins. Co. (2000), 88 Ohio St.3d 480. (Although the court chose to address the issue of individual defenses under the typicality requirement, illustrating the extent to which typicality and commonality tend to merge, the assessment is equally valid for commonality purposes.) The operative theory of recovery in Baughman was fraud. The court found that even if lack of reliance on the alleged misrepresentations by the defendant could be proven for some class members, this did not invalidate the class:
 {¶ 51} "`[D]efenses asserted against a class representative should not make his or her claims atypical. Defenses may affect the individual's ultimate right to recover, but they do not affect the presentation of the case on the liability issues for the plaintiff class.' * * * In particular, '[m]ost courts have rejected any adequacy challenge that the plaintiff or some class members were not actually deceived on the ground that that fact goes to the merits of the individual's right to recover and will not bar class certification.'" Id. at 486-487, quoting 1 Newberg on Class Actions (3 Ed. 1992), 3-162 to 3-163, section 3.34.
 {¶ 52} Similarly, in Hamilton, supra, the court stated that individual defenses were not fatal to certification: "a unique defense will not destroy typicality or adequacy of representation unless it is so central to the litigation that it threatens to preoccupy the class representative to the detriment of other class members." Id. at 78.
 {¶ 53} Many other courts have reached a similar conclusion: "[Class representative] Singer clearly alleges a common scheme of fraudulent conduct. While it may be true, as noted by [defendant] AT T in its memorandums of law in opposition to Plaintiffs' Motion for Class Certification, that individualized defenses may be asserted by Defendant in this action, this fact alone is insufficient to destroy the commonality requirement. As stated above, the commonality prerequisite does not require that all of the questions of law and/or fact be common." Singer v. AT T Corp. (S.D.Fla. 1998), 185 F.R.D. 681, 688.
 {¶ 54} "The Defendants argue that many reasons exist as to why the [coronary pacemaker] leads may fail. This argument, however, does not go to whether a class is proper, but rather goes to the merits. The Defendants can argue to the trier of fact that they should not be held liable because of the many reasons that the leads could have failed. Consequently, we find a commonality of certain issues." In re Telectronics Pacing Systems, Inc., Accufix Atrial J Leads Products Liability Litigation (S.D.Ohio 1995), 164 F.R.D. 222, 229.
 {¶ 55} While the question is clearly not settled in all jurisdictions, on the basis of Baughman and the other above-quoted cases, we are ultimately persuaded that the question of individualized defenses is one better examined under the requirements of Civ.R. 23(B)(3), addressing the superiority and manageability of a class action compared to other forms of litigation: "The potential for individualized defenses does not detract from the commonality of the questions as viewed from the standpoint of the class members, but the problem clearly poses significant case management concerns." In re School Asbestos Litigation (C.A.3, 1986), 789 F.2d 996, 1011. We will accordingly defer some aspects of the question to our discussion of Civ.R 23(B)(3) below, finding in the meantime that the existence of individualized defenses, of itself, does not warrant reversal of the trial court's finding of commonality beyond our previous determination that the class is drawn too broadly because of the variety of Becton products included.
 {¶ 56} The fifth element under Hamilton, that of typicality pursuant to Civ.R. 23(A)(3), has been largely addressed in our discussion of commonality issues. In brief, "the requirement of typicality serves the purpose of protecting the rights of absent class members by ensuring that the interests of the representative parties are substantially aligned with those of the class." Baughman, at 484. In the present case, as we stated above in examining Grant's suitability as a class representative, there is nothing atypical in her personal accident if the class is allowed to stand as certified. However, because we have found that the class lacks a common nucleus of operative facts based on the variations between the different Becton hollow-bore needle devices, Grant's interests may be antagonistic to those absent class members who were injured using different devices. The requirement of typicality is therefore not met given the class defined by the trial court. This finding is, however, limited to considerations based on the range of hollow-bore needle devices at issue, and is not based on the availability of individualized defenses, which we find does not warrant reversal of the trial court's finding of typicality. Grant is a typical class member despite the availability of individual defenses, if the class is reshaped to eliminate the lack of commonality presented by the different Becton products.
 {¶ 57} We now turn to the seventh element under Hamilton, which is the requirement that the action fall under one or more of the types of maintainable actions defined under Civ.R. 23(B). In the present case, the trial court found that Civ.R. 23(B)(3) applied. Under this section, the court must first find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and then find that the class action is superior to other methods for the fair and efficient adjudication of the controversy. Our discussion of this element incorporates, of course, our prior determination that the class, to the extent that it embraces persons injured using all varieties of Becton hollow-bore needle devices, lacks sufficient common issues to satisfy Civ.R.23(A)(2). As the class is now defined, therefore, common issues do not predominate.
 {¶ 58} On the question of whether the class action would be a superior method of adjudication if common issues did predominate, however, we would find that it is. The rule enumerates four non-exclusive factors for consideration in determining the desirability of maintaining an action as a class action over other methods of adjudication:
 {¶ 59} "(a) The interest of members of the class and individually controlling the prosecution or defense of separate action;
 {¶ 60} "(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class'
 {¶ 61} "(c) The desirability or undesirability of concentrating the litigation of the claims in a particular forum;
 {¶ 62} "(d) The difficulties likely to be encountered in the management of class action." Civ.R. 23(B)(3), (a) through (d).
 {¶ 63} In the present case, the trial court found that the interest of class members in controlling individually the prosecution of their separate cases was not significant in relation to the other factors. The trial court based this conclusion on the relatively small compensatory damages involved. The trial court also noted that the individual claims would be "negative value" cases, if pursued separately, that is, that the cost of bringing an individual action would likely exceed any compensatory recovery. The court also considered this as enhancing superiority of the class action because of the desirability of preserving judicial resources and concentrating the litigation in a single forum. Finally, the trial court concluded that, although Becton had presented significant arguments against the manageability of the proposed action, the court found that the case as a whole could be manageable as a class action. We find this assessment by the trial court to be accurate.
 {¶ 64} First, we reject Becton's contention that the damages prayed for will not support a class action because the plaintiffs, by law, have already been provided, free of charge by their employers, with the medical testing for which they seek recovery. This goes to the merits of the action, not the certifiability of the class, and it is premature at this point in the case to argue questions of out-of-pocket costs, actual availability of the tests for each class member, applicability of the collateral source rule, etcetera.
 {¶ 65} With respect to the superiority issue generally, we note that the purpose of Civ.R. 23(B)(3) is to bring within the fold of maintainable class actions "cases in which the efficiency and economy of common adjudication outweigh the interest of individual autonomy." Hamilton, at 80. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." Mace v. VanRu Credit Corp. (C.A.7, 1997), 109 F.3d 338, 344. This action, if common issues predominated, would fit well within these objectives in serving the interests of efficient adjudication. Moreover, with respect to the manageability issues raised by Becton, they raise no obstacle not encountered with any otherwise certifiable class action. The possibility that individual defenses based on causation may be raised is admittedly a concern, but one that has been dealt with in similar cases by means of various procedural devices which are within the trial court's wide discretion in managing a class action: the creation of appropriate subclasses, bifurcation of common and individual liability issues, or severance. Lowe v. Sun Refining Marketing Co. (1992), 73 Ohio App.3d 563; In re Telectronics Pacing Systems, Inc., at 230 ("[I]ssues of negligence, strict liability, fraud, misrepresentation, and breach of warranty will be tried to a single jury * * * the class members may pursue their individual cases in separate trials to determine if the Defendants caused their injury and caused them damages").
 {¶ 66} Ultimately, we find that the opinion of a highly experienced and respected trial judge regarding the manageability of proposed class action is the best estimation available to us of the administrative and legal impediments to maintaining the action. We accordingly respect the trial court's discretion in reaching this conclusion, and find no error on the part of the trial court in concluding that the proposed action was a superior method of adjudication, were all other requirements met.
 {¶ 67} Having addressed the seven Hamilton elements with varying results, we are thus left to summarize our findings in this matter and formulate a suitably tailored disposition of the appeal. In accordance with the foregoing, we find that, while the trial court did not err in its application and evaluation of most factors in the Hamilton standard for certifying a class action, we must ultimately disagree with the trial court's conclusion that the requirement of commonality under Civ.R. 23(A)(2) was met by a class that included persons injured while using all varieties of Becton hollow-bore needle devices. The trial court's order certifying the class is accordingly reversed. The matter is remanded to the Franklin County Court of Common Pleas for a determination, within the trial court's discretion, of whether the class can be separated into appropriate subclasses, limited to a class of persons using devices comparable to that which injured Grant, otherwise redefined in accordance with this opinion, or whether the action must be dismissed.
Judgment reversed and case remanded.
TYACK, BOWMAN and BRYANT, JJ., concur.